The PEOPLE OF the STATE OF CALIFORNIA, acting By and Through the DEPARTMENT OF TRANSPORTATION

v.

The UNITED STATES.

No. 281–75.

United States Court of Claims.

March 23, 1977.

Milton B. Kane, Sacramento, Cal., atty. of record, for plaintiff. Gordon S. Baca, Sacramento, Cal., of counsel.

Stephen G. Anderson, Trial Atty., Civil Div., U. S. Dept. of Justice, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant. Lawrence S. Smith, Washington, D.C., of counsel.

Before DAVIS, KASHIWA and KUNZIG, Judges.

**ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

KASHIWA, Judge:

Plaintiff, the State of California, Department of Transportation, in this case asserts a claim founded upon an express contract with the United States under the Federal-Aid Highways Act (23 U.S.C. § 101, et seq. (1970)). Founding its claim under 23 U.S.C. § 106(a) (1970), plaintiff contends that it is entitled to the sum of $158,941.68, which represents the additional costs incurred by the State highway department in acquiring the right of way for an interstate highway. This sum represents the difference between replacement cost which the State paid for property and fair market value on which the Federal Highway Administration reimbursed the State. Since this case propounds no genuine issue as to any material fact, it is properly before the court on cross motions for summary judgment. For the reasons set forth below, we agree with the defendant that under the Federal-Aid Highways Act plaintiff has been fully paid. We, therefore, grant defendant's motion for summary judgment.

I.

The statutory and regulatory[1] scheme under which this case arises is as follows: The Federal-Aid Highways Act (also "Act")[2] provides for joint federal and state participation in the construction of certain highways, with the actual construction to be undertaken by the state "subject to the inspection and approval" of the Secretary of Transportation ("Secretary").[3] (§ 114; 49 U.S.C. § 1655(a)(1) (1970).) The Act

---

[1] In this opinion, we use the term "regulation" figuratively to refer to regulations published in the Federal Register and Code of Federal Regulations as well as to policy and procedure memoranda. See note 10, infra.

[2] Unless otherwise indicated, all section references are to the Federal-Aid Highways Act, 23 U.S.C. § 101, et seq. (1970).

[3] That Act was originally administered by the Department of Commerce. When the Department of Transportation was created in 1966, the functions, powers and duties of the Secretary of Commerce under the Act were transferred to the Secretary of Transportation.

prescribes the formula under which funds are apportioned among the several states for this purpose. (§ 104.) Highway projects must meet standards adopted by the Secretary under section 109, and states wishing to avail themselves of the benefits of federal assistance under the Act must submit their construction proposals to the Secretary for his approval. (§ 105.) The Secretary is authorized to make available to states funds for the acquisition of rights-of-way in anticipation of construction, under such rules and regulations as the Secretary may prescribe. Construction must take place within seven years thereafter. (§ 108(a) (1970).) If a proposed construction program is given approval, detailed plans, specifications and estimates must be submitted to the Secretary for his further approval. (§ 106.) When the Secretary approves the detailed plans for a specific project, the Act deems such approval "a contractual obligation of the Federal Government for the payment of its proportional contribution thereto." (§ 106(a).) "As soon as practicable" thereafter, a "formal project agreement" for the construction and maintenance of the project must be entered into between the Secretary and the appropriate state highway agency. (§ 110.) After completion of the project in accordance with the plans and specifications and after approval of the final voucher by the Secretary, a state is entitled "to payment out of the appropriate sums apportioned to it of the unpaid balance of the Federal share payable on account of such project." (§ 121(b).) The Secretary is authorized to prescribe and promulgate rules and regulations for the carrying out of the provisions of the Act. (§ 315.)

As previously noted, section 108 of the Act provides for making available funds to the states for the acquisition of rights-of-way in advance of construction, subject to such rules and regulations as the Secretary may prescribe. Policy and Procedure Memorandum ("PPM") 21–4.1 was promulgated in December 1960, effective February 15, 1961.[4] The regulation is entitled "RIGHT–OF–WAY PROCEDURES (State Acquisitions Under Federal-aid Procedures)." The purpose of the memorandum is stated in paragraph 1:

The purpose of this memorandum is to prescribe the policies and procedures relating to Federal participation in right-of-way and property damage costs for which reimbursement is requested by the State under Federal-aid procedures.

Paragraph 5 of this regulation sets forth in detail numerous requirements which must be met by the state in order to obtain federal payments for right-of-way acquisitions. The standard of fair market value is referred to by the regulations as the basis for compensation for real property. For example, paragraph 5.j.(1) states, in part:

(1) Determination of Fair Market Value by State Reviewing Appraiser: Within each State highway department, one or more individuals, hereinafter referred to as reviewing appraisers, are authorized to determine the fair market value of real property, which amount is to govern negotiations and settlements.   *   *   *

Paragraph 4 of the regulation is captioned "STATE RIGHT–OF–WAY ORGANIZATION, POLICIES AND PROCEDURES." Paragraph 4.a requires that:

a.  The State shall transmit under the signature of the chief officer of the State highway department, in triplicate, to the division engineer information as to the regulations, procedures, and manner in which right-of-way matters are handled by the State. Such information shall include, but not be limited to the following statements:

There follows a listing of 35 items of information that the state is required to submit to the federal authorities. The in-

---

4. The "regulations" involved herein are those issued by the Department of Commerce, Bureau of Public Roads, entitled Policy and Procedure Memorandum. *See* note 10, *infra.*

formation called for by item (14) of this listing is:

(14) When the State, in acquiring right-of-way, both by purchase and condemnation, becomes legally obligated to pay right-of-way costs.

Paragraph 3 of the regulation is captioned: "GENERAL PROVISIONS." Paragraph 3.a.(1) provides:

a. Under Federal law and regulations, participation of Federal funds is permitted in right-of-way and property damage costs incurred by the States for highway projects financed in whole or in part with Federal funds under the circumstances and to the extent set forth below:

(1) When there has been approval of a program and the State has been authorized to proceed with the right-of-way phase of a programmed project and the State subsequent to such authorization legally obligates itself under State law to pay right-of-way costs. The dates set forth by the State under paragraph 4a(14) shall be used in determining eligibility of right-of-way costs unless different dates are determined by Public Roads and included in its acceptance of the State's procedures.

As noted, paragraph 5 of the regulation, *supra*, sets forth numerous requirements that must be met by the state in order to obtain federal payment for right-of-way acquisitions. Paragraph 5.c provides, in part:

c. Either at the time of program approval or subsequently, Public Roads shall issue a letter of authorization to the State to proceed with (1) studies to determine the relative right-of-way costs and other factors pertinent to alternate construction locations including incidentals connected with the acquisition of rights-of-way on a selected construction location, or (2) to actually acquire rights-of-way on a selected construction location including incidentals connected therewith, or (3) for both. * * *

Paragraph 6 of PPM 21–4.1 is captioned "ELIGIBILITY" and sets forth numerous criteria to be met in order for the right-of-way costs to be eligible for federal payment. Paragraph 6.a states:

a. The authorization by the division engineer to proceed with acquisition of rights-of-way shall constitute approval of the necessity for the right-of-way to be acquired and the general eligibility for Federal participation in the cost of right-of-way items. Such authorization shall be in accordance with paragraph 5c.

Paragraph 6.u of the same regulation specifies:

u. The amounts required to be paid for lands in public ownership shall be justified in the same manner and to the same extent as though the acquisition involved a private owner.

Paragraph 6.u of PPM 21–4.1 was amended by paragraph 5.1 of PPM 80–1 which went into effect November 15, 1968. Paragraph 5.1 provides:

Generally, the amounts required to be paid for lands or improvements in public ownership shall be justified in the same manner and to the same extent as though the acquisition involved a private owner. The exception to the foregoing general rule would occur where the State highway department can demonstrate and the Director of Public Roads concurs that the functional replacement of the facility is necessary to preserve and protect the public's interest. In such instances Federal funds may participate in the depreciated reproduction cost of the improvements exclusive of betterments and the reasonable cost of acquiring a substitute site.

## II.

In the early 1960's, the California Division of Highways was developing plans for an interstate highway. The plans for the highway involved property known as the "McKinley School" in the Franklin-McKinley School District of Santa Clara County, California. In September 1963, the Division of Highways had an official appraisal made

of the property. The appraisal report reflected the market value of the property as $763,549.25.[5]

Under Federal-aid procedures, relating to federal participation in right-of-way and property damage costs for which the State would be requesting reimbursement, the California Highway Transportation Agency, Department of Public Works, Division of Highways, submitted the information required under PPM 21–4.1. Pursuant to paragraph 4.a of this regulation, *supra*, a statement dated April 1964 was formally transmitted to the Division Engineer, Bureau of Public Roads, Department of Commerce, Sacramento, California, by letter dated May 14, 1964.

By letter to the State Highway Engineer, Sacramento, California, dated November 17, 1964, the Division Engineer, Bureau of Public Roads, United States Department of Commerce, authorized the State to proceed with negotiations for, and the purchase of, the right-of-way that included the school property involved in the instant proceeding.

On June 16, 1965, the California Division of Highways entered into an agreement with the Franklin-McKinley School District of Santa Clara County, California, and the California Department of General Services for the acquisition of the McKinley School property and for the construction of a replacement school. The United States was not a party to the agreement and was not involved in the negotiation.

On August 14, 1967, the Bureau of Public Roads, United States Department of Transportation, and the Division of Highways, Department of Public Works, State of California, entered into a formal Federal-Aid Project Agreement. This agreement confirms the effective date of the rights-of-way authorization, namely, November 17, 1964, and obligates federal funds for the project in the amount of $19 million, the estimated total cost of the project being

$22,400,000. The agreement is bilateral, being signed by both parties, and provides, in pertinent part, as follows:

The State, through its Highway Department, having complied, or hereby agreeing to comply, with the terms and conditions set forth in (1) Title 23, U.S. Code, Highways, (2) the Regulations issued pursuant thereto by the Secretary of Commerce and, (3) the policies and procedures promulgated by the Federal Highway Administrator relative to the above designated project, and the Bureau of Public Roads having authorized certain work to proceed as evidence by the date entered opposite the specific item of work, Federal funds are obligated for the project not to exceed the amount shown herein, the balance of the estimated total cost being an obligation of the State. Such obligation of Federal funds extends only to project costs incurred by the State after the Bureau of Public Roads authorization to proceed with the project involving such costs.

The Federal-Aid Highways Act provides a complicated formula for determining the federal share payable to a state for the highways built under its provisions; for highways of the category involved in this case in California, it can be stated, generally, that the share was about 92 percent. (See §§ 104(b)(5) and 120(c).) The state obtains payment of these funds by submitting requests for such payments in the form of vouchers, as prescribed by the Federal Highway Administrator. (25 Fed.Reg. 4162, May 11, 1960, § 1.31; 23 C.F.R. § 1.31.)

In due course, the date of which is not shown by plaintiff, the State Division of Highways requested payment of the federal share for the acquisition of the right-of-way involved herein. Although not expressly shown by plaintiff in its petition, brief or exhibits, the federal-share request by the

5. The appraisal reported the market value of the property as $763,549.25, which is the sum of $120,514.50 for land and $643,034.75 for improvements that included structures, equipment, yard improvements and utilities.

State with respect to the McKinley School was apparently based on $922,490.43, presumably the total cost of replacing the school purchased for the right-of-way with another at a different location.[6] The federal share paid was based on the fair market value of the property, $763,549.25.

The State's request for payment of the federal share, with respect to the McKinley School property, based on more than the market value of $763,549.25 was rejected by the Bureau of Public Roads. The Bureau relied on paragraph 6.u of PPM 21–4.1, *supra*, which was applicable at the time of the State's acquisition on June 11, 1965, of the school property. After unsuccessfully exhausting its administrative remedies, on August 4, 1975, plaintiff filed its petition in this court, seeking judgment for $158,-941.68, plus interest thereon from June 16, 1965; its claim, founded upon § 106(a), represents an amount equal to the difference between replacement cost which the State paid for the McKinley property and fair market value on which the Federal Highway Administration reimbursed the State.

### III.

Plaintiff recognizes that its claim is founded upon an express contract with the United States. Section 106(a) provides that approval by the Secretary of the plans, specifications and estimates for a given highway project submitted by a state shall constitute a contractual obligation of the Federal Government for payment of its proportional share. In the instant case these steps were taken and a contract resulted. This contract is in the form of the "Federal-Aid Project Agreement," dated August 14, 1967. In this bilateral document, it is provided that plaintiff has complied, or thereby agrees to comply with the terms and conditions set forth in Title 23, U.S.Code, Highways, the regulations issued pursuant thereto and "the policy and procedures promulgated by the Federal Highway Administrator" relative to the project. It, thus became contractually bound, *inter alia*, by the provisions of the policy and procedure memoranda of the Government. The "regulations" involved here, PPM 21–4.1, were issued December 30, 1960, effective February 15, 1961.[7] A review of the provisions of those regulations show clearly that the basis for determining the federal share payable to the State for the instant property acquired was fair market value of the property. Nevertheless, plaintiff argues that the clear intent of Congress is to participate in the "total" cost of the construction of the highways, "without unilateral administrative decision excluding any portion of the cost of construction by the State." Plaintiff submits that there is no statutory basis for PPM 21–4.1 and, in fact, that it is squarely in conflict with the statutes upon which it is based; also, to the extent that PPM 21–4.1 denies just compensation, it is in violation of the Fifth Amendment of the United States Constitution and in violation of Article I, Section 14 of the Constitution of California.[8] We do not agree with the plaintiff.

---

**6.** Plaintiff's petition and its brief imply that the total cost of the new school was $922,490.43; it claims the sum of $158,941.68, which (except for an insignificant discrepancy of 50 cents) is the difference between $922,490.43 and the appraised value of the school property, $763,-549.25. However, in neither its petition nor its brief has plaintiff set forth any proof or documentation of the said total cost of the new school.

**7.** *See* note 10, *infra*.

**8.** Article I, Section 14 of the Constitution of the State of California provides:

Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner, and no right of way or lands to be used for reservoir purposes shall be appropriated to the use of any corporation, except a municipal corporation or a county or the State or metropolitan water district, municipal utility district, municipal water district, drainage, irrigation, levee, reclamation or water conservation district, or similar public corporation until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefits from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in a court of record, as shall be prescribed by law; * * *.

Article I, Section 14 was changed to Article I, Section 19 effective November 5, 1974.

The statute authorizes the Secretary to make available to states funds for the acquisition of rights-of-way in anticipation of construction under such rules and regulations as he may prescribe. (§§ 108, 315.) Pursuant thereto, the Secretary prescribed regulations which were published in the Federal Register, which provided, *inter alia*, that federal-aid funds shall not participate in any cost which is not incurred in conformity with the policies and procedures prescribed by the Administrator.[9] As shown, the policies and procedures which were prescribed by the Administrator and in effect at the time involved herein provided that the amounts to be paid for property in public ownership were to be justified in the same manner and to the same extent as though the acquisition involved a private owner, who was to be paid, under the regulation, fair market value. (PPM 21–4.1, paragraph 6.u.) Thus, under the regulation, the concept of determining the compensation on the basis of fair market value applied to acquisitions of both private and public property. To so provide is clearly within the scope of the statute and the regulations; plaintiff points to nothing to the contrary that is of any validity. Plaintiff argues that the payment to the State must be based on the "total cost * * * without unilateral administrative decision excluding any portion" of the State's cost of construction. This is incorrect. The regulation excludes numerous types of other costs which are not eligible for federal participation (see, e. g., PPM 21–4.1, paragraphs 6.b, 6.c, 6.i, 6.k, 6.m, 6.t). Furthermore, in a very recent case, the United States Court of Appeals for the Ninth Circuit upheld the principle that the terms of the Federal Highway Administration's Policy and Procedure Memorandum govern the amount payable to the state concerning highway programs under the Act and that the State of California was limited to such an amount irrespective of the fact that it had expended more and sought recovery on the basis of the larger sum. The court specifically rejected the State's argument that it is entitled to recover on the basis of the "total cost" of the project, without regard to the regulations. *People of the State of California v. United States*, No. 75–1140 (9th Cir. September 30, 1976).

We also recognize plaintiff was on notice that the payment to it for the school property would be governed by PPM 21–4.1, under which the federal share was to be based on fair market value of the property. The State had notice not only of the regulations published in the Federal Register, but also of PPM 21–4.1, as shown by its submission to the federal authorities of the information and data called for by paragraph 4.a of PPM 21–4.1. Having knowledge of PPM 21–4.1 at the time it acquired the school property, plaintiff is bound by its terms regardless of whether the policy and procedure memorandum had been published as a regulation.[10] *United States v. Aarons*, 310

---

9. The regulations were published in the Federal Register May 11, 1960, 25 Fed.Reg. 4162, *et seq.*, and in the Code of Federal Regulations, 23 C.F.R. §§ 1.9, 1.14 and 1.32.

Section 1.9 provides as follows:
Federal-aid funds shall not participate in any cost which is not incurred in conformity with applicable Federal and State law, the regulations in this part, and policies and procedures prescribed by the Administrator. Federal funds shall not be paid on account of any costs incurred prior to authorization by the Administrator to the State highway department to proceed with the project or part thereof involving such cost.

Section 1.14 provides as follows:
Project agreements, and modifications thereof, shall be in forms satisfactory to the Administrator, evidencing acceptance by the State highway department of conditions to payment of Federal funds, as prescribed by Federal laws and the regulations in this part, and the amount of Federal funds obligated. Section 1.32 provides as follows:
The Administrator shall promulgate and require the observance of such policies and procedures, and may take such other action as he may deem necessary for carrying out the provisions and purposes of the Federal laws and the regulations in this part.

10. We recognize that the Department of Transportation had ruled that the Federal Highway Administration memoranda do not rise to the status of regulations, 23 C.F.R. § 1.32(a) (1973). However, this fact does not affect the result in the instant case since plaintiff had knowledge of the memorandum in issue at the time it acquired the McKinley property.

F.2d 341, 348 (2d Cir. 1962); *Kessler v. Federal Communications Commission*, 117 U.S.App.D.C. 130, 326 F.2d 673, 690 (1963). Furthermore, it is important to bear in mind that plaintiff, by a bilateral contract signed by representatives of defendant and of the State of California, agreed, *inter alia*, to comply with the terms and conditions set forth in the policies and procedures promulgated by the Federal Highway Administration. Having entered into an express contractual agreement with the Federal Government which provided the rules under which compensation was to be determined, it clearly is bound by that contract. This court has so held in a similar situation, *Eldorado Canyon Resort, Inc. v. United States*, Ct.Cl., 538 F.2d 347 (Order of April 16, 1976); *Bishop v. United States*, 164 Ct.Cl. 717, 723 (1964) (Fifth Amendment taking cases). *See also Commonwealth of Massachusetts v. Connor*, 248 F.Supp. 656, 659 (D.Mass.), *aff'd*, 366 F.2d 778 (1st Cir. 1966). Having agreed to one basis of computing costs and determining the amount to be paid, the State cannot now disavow that express agreement. The terms of the contract govern and the claimant cannot recover on a different basis.

Nevertheless, plaintiff argues that the term "lands" as used in PPM 21–4.1, paragraph 6.u, *supra*, refers to lands only and not to improvements. Plaintiff reaches this conclusion by analyzing subsequently issued policy and procedure memoranda which use the phrase "lands or improvements." (*See, e. g.*, PPM 80–1, paragraph 5.1, *supra*.) We, however, have carefully examined the 24 subparagraphs in paragraph 6, PPM 21–4.1, and have determined that the term "lands" as used in subparagraph 6.u means all real property. The other subparts of paragraph 6 use the terms "lands" and "real property" interchangeably; when the word "improvements" is used, it is in connection with rights-of-way acquired as land or real property. Furthermore, paragraph 5.q of PPM 21–4.1 shows clearly that the regulation uses the word "lands" to include improvements thereon, for it provides, in pertinent part:

When lands are acquired for right-of-way purposes, all private installations thereon, except utility facilities the retention of which is clearly justified, shall be cleared therefrom prior to acceptance of the completed construction project, * *.

We find therefore, that there is no merit to plaintiff's contention in this regard.

Plaintiff has been paid in accordance with regulations to which it contractually agreed to be bound; it has no valid claim for any additional sum. We must, however, address plaintiff's constitutional argument.

Plaintiff argues that the provision under which the State was paid, paragraph 6.u of the regulation, "is unconstitutional as applied." Plaintiff first contends that the provision is in violation of the Fifth Amendment of the Constitution. We, however, do not find the Fifth Amendment applicable; plaintiff's claim is based solely upon an express contract with the United States. Next, plaintiff submits that under the California State Constitution the Federal Highway Administration "has no authority to enforce a regulation which requires a citizen of the State of California to accept less than just compensation nor does it have authority to force the State of California to pay less than just compensation when property is acquired by eminent domain." We feel that these are not the issues.

The Federal Highway Administration is not enforcing a regulation that "requires a citizen of the State of California to accept less than just compensation." As previously stated, defendant had an express contract with California under which the standard applied for payment is made applicable by the terms of the agreement. The arrangement between the parties is purely contractual. Plaintiff recognizes this; its brief specifically states that its claim in this suit "is founded upon an express contract with the Federal Government under the Federal-Aid Highway Act, 23 U.S.C. Section 106(a)." Its motion for summary judg-

ment also contains the identical statement. Since the relationship between the parties is contractual, and the claim is based on the express contract between the parties, the contract governs; under it, plaintiff has been paid in full and has no further claim against the defendant. Likewise, plaintiff's assertion that the Federal Highway Administration does not "have the authority to force the State of California to pay less than just compensation when property is acquired by eminent domain," is not an issue in the case. The Federal Highway Administration made an express contract with the California department of highways, whereby California, by virtue of its agreement with the defendant, agreed to accept the compensation prescribed by paragraph 6.u of PPM 21–4.1. The defendant's dealings were with the California highway department, not with an individual citizen of California. Obviously, there was no taking by the Federal Government from any landowner in California; the State of California had the only dealings with the individual landowners and it alone, not the Federal Government, is responsible for such dealings. In any event, plaintiff's argument is of no merit. In order to qualify for and receive federal funds under the Act, the State must comply with the applicable federal regulations; The Federal Government is not bound constitutionally or statutorily to grant federal highway funds to states not complying with the federal guidelines. *State of Nebraska, Department*

*of Roads v. Tiemann*, 510 F.2d 446, 448 (8th Cir. 1975); *Port Authority of Saint Paul v. United States*, 432 F.2d 455, 460, 193 Ct.Cl. 108, 117–118 (1970); and cases cited therein.[11]

Lastly, plaintiff argues that since the highway project was not completed prior to amendment of paragraph 6.u, PPM 21–4.1, by paragraph 5.1, PPM 80–1, then without retroactive waiver of the provisions of PPM 21–4.1, but by application of the regulation in effect at the time of payment, this court should allow California's claim. We find plaintiff's argument misleading. As previously demonstrated, PPM 21–4.1 was issued December, 1960, effective February 15, 1961. California became legally obligated to pay right-of-way costs for the McKinley School property on June 16, 1965, the date it executed the contract with the School District.[12] The amount payable to the California Division of Highways by the United States is governed by the regulations in effect on that date. On August 14, 1967, when California entered into the Federal-Aid Project Agreement with the United States, it knew that the amount it would receive from the United States would be on the basis of fair market value of the property. The new regulation, PPM 80–1, paragraph 5.1, did not become effective until November 15, 1968, over three years after California executed the contract with the School District for purchase of the McKinley property and more than one year after

---

11. Plaintiff has no shown that the replacement value standard for public structures is so universally accepted in the United States that it might possibly be invalid for the Federal Highway Administration to refuse to accept it. A survey by the Government suggests that this standard is far from being universally adopted, and, though plaintiff cavils at the survey, it concedes flatly, in a post-argument submission to the court, that "the State of California does not contend that its recognition of the 'replacement cost' or 'substitute facilities' was a majority view in 1967" [when the contract in issue was executed].

12. In answer to paragraph 4.a.(14) of PPM 21–4.1, *supra*, requiring information as to when

the State becomes legally obligated to pay right-of-way costs acquired by purchase, the State advised, in pertinent part, as follows:

The State becomes legally obligated to pay right of way costs at the time the right of way contract is executed by the District Engineer on behalf of the State. The contract has previously been executed by the grantor and approved by Headquarters Right of Way Office. At the time the contract is executed by the District Engineer a letter transmitting the fully executed contract to the grantor is also prepared and the date of this letter is evidence of the date the State becomes legally obligated to pay.

\* \* \* \* \* \*

plaintiff entered into the Federal-Aid Project Agreement with the United States. Thus, plaintiff agreed to pay the School District more than fair market value of the McKinley property based on its own volition and with knowledge that it would not be reimbursed by the United States for any sum greater than the amount payable on the basis of fair market value. As a result, there is no basis for applying the new regulation. The fact that the whole section of the highway being built was not completed until some time after the effective date of the new regulation is immaterial.

Pursuant to the contract between the parties and the regulations in effect at the time California became legally obligated to pay the right-of-way costs for the school property involved, plaintiff has been paid in full.[13]

## CONCLUSION

For the foregoing reasons, we grant defendant's cross motion for summary judgment and deny plaintiff's motion for summary judgment. Plaintiff's petition is dismissed.

---

13. As an affirmative defense, defendant raised the question of whether plaintiff's claim is barred by the six-year statute of limitations, 28 U.S.C. § 2501 (1970), in that plaintiff's petition filed August 4, 1975, asserts a claim for compensation which accrued on June 16, 1965, the date of plaintiff's agreement with the school district. However, in open court during oral argument, defendant abandoned this defense; as a result, we need not discuss it.