Michael L. **GARBACZ**, et al.

v.

The **UNITED STATES**.

No. 294–79C.

United States Court of Claims.

July 29, 1981.

John I. Heise, Jr., Silver Spring, Md., attorney of record, for plaintiffs; Irving Kator, Washington, D. C., of counsel.

Robert E. Richardson, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant; Sara Najjar, National Aeronautics and Space Administration, Washington, D. C., of counsel.

Before SKELTON, Senior Judge, and KASHIWA and BENNETT, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

This case is before the court on cross motions for summary judgment. There is no genuine issue of material fact. We hold in defendant's favor after hearing oral argument.

Prior to November 1974, the plaintiffs, Michael L. Garbacz, Earl W. Glahn, and Jules Lehmann, were all serving in the grade of GS–16 in the competitive Civil Service with the National Aeronautics and Space Administration (NASA). By separate letters dated October 29, 1974, plaintiffs were informed that certain NASA executive-level positions, including theirs, had been reviewed. The letters also indicated the consequences of that review:

> * * * As a result of this review, it has been determined that the position you occupy * * * will be converted with no change in title or salary to a NASA excepted position under section 203(b)(2) of the NASA Act of 1958 as Amended.

> You are serving in a position in the Competitive Service and acceptance of the above conversion will not result in your leaving the Competitive Service. This means that the Civil Service Act and other laws applying to Competitive Service positions will apply to you during your service in this excepted position.

Section 203(b)(2) of the National Aeronautics and Space Act of 1958, as amended, 42 U.S.C. § 2473(b)(2) (1970), provides:

> (b) In the performance of its functions the Administration is authorized—

> * * * * * * *

> (2) to appoint and fix the compensation of such officers and employees as may be necessary to carry out such functions. Such officers and employees shall be appointed in accordance with the civil-service laws and their compensation fixed in accordance with chapter 51 and subchapter III of chapter 53 of Title 5, *except that (A) to the extent the Administrator deems such action necessary to the discharge of his responsibilities, he may appoint not more than four hundred and twenty-five of the scientific, engineering, and administrative personnel of the Administration without regard to such laws, and may fix the compensation of such personnel not in excess of the highest*

*rate of grade 18 of the General Schedule, and (B) to the extent the Administrator deems such action necessary to recruit specially qualified scientific and engineering talent, he may establish the entrance grade for scientific and engineering personnel without previous service in the Federal Government at a level up to two grades higher than the grade provided for such personnel under the General Schedule, and fix their compensation accordingly[.]* [Emphasis supplied.]

By Standard Form 50, Notification of Personnel Action, plaintiffs received confirmation shortly thereafter of the action. The Notification of Personnel Action indicated the nature of the action was a "Pay System Change." That change removed plaintiffs from the General Schedule (GS), a standard salary schedule under which jobs of comparable responsibility throughout the Government are paid an identical rate, and placed the plaintiffs instead in the NASA excepted pay category, in which salaries are determined administratively by the agency after a job-by-job analysis. The Notification of Personnel Action also indicated as had the earlier letters that each plaintiff would "remain in the competitive service as long as [he occupied the] position" and that the authority for the system change was 42 U.S.C. § 2473(b)(2).[1]

Thus, under the letters and notices sent to the plaintiffs, NASA informed each of them that the only action which was being taken was to remove each of the plaintiffs from the General Schedule and, instead, place the employees in a system where NASA determined the salaries administratively. The maximum salary which the Administrator could so determine was limited to the pay ceiling applicable to GS employees. Nothing in the 1974 letters or notices apprising plaintiffs of the pay system change (or anything else in this record) purports to remove plaintiffs from the competitive Civil Service. The letters and notices in fact disclaim such a result. We thus take the 1974 action to have only the limited effect of altering the manner in which plaintiffs' salaries were determined. Indeed, we do not understand plaintiffs to argue the contrary, *i. e.*, that the 1974 personnel action removed them from the competitive service.

Subsequent to, and independent of this 1974 change in the method by which plaintiffs' pay was determined, the NASA Administrator in February 1977 increased plaintiffs' salaries. Previously, following October 1975 and October 1976 determinations, plaintiffs' pay had also been increased. The 1975 and 1976 determinations maintained plaintiffs' salaries at a rate equal to the pay ceiling for GS employees. The 1977 determination, while increasing plaintiffs' salaries, did not raise plaintiffs' pay to the then applicable GS pay ceiling. It is this failure to pay plaintiffs the highest salary within the Administrator's discretion of which plaintiffs complain.

Thereafter, plaintiffs filed appeals with the Federal Employees Appeals Authority (FEAA), alleging the 1977 pay raises in fact constituted a demotion when considered with plaintiffs' salaries prior to the 1974 pay system change. The FEAA dismissed each appeal in October 1977 as untimely and alternatively concluded that the 1977 salary determinations were not subject to FEAA review. Further discretionary review was declined in 1979 by a successor of the Appeals Review Board. Eventually, the action in this court was filed. In it, plain-

1. References in this opinion to the United States Code are to the 1970 version except as noted. The administrative record suggests that NASA and the Civil Service Commission have consistently interpreted 42 U.S.C. § 2473(b)(2)(A) as allowing that agency to exempt employees, up to the numerical limits specified in the statute, from either the benefits of the Civil Service Act, formerly 5 U.S.C. §§ 1101 *et seq.* (relating to benefits of the competitive service) or the Classification Act of 1949, formerly 5 U.S.C. §§ 5105 *et seq.* (relating to classification of positions for pay purposes) or both. These interpretations, of course, are entitled to considerable deference. *E. g., Red Lion Broadcasting Co. v. Federal Communications Commission,* 395 U.S. 367, 381 & n.9, 89 S.Ct. 1794, 1801 & n.9, 23 L.Ed.2d 371 (1969), and cases cited thereat. Plaintiffs have not argued for a contrary interpretation of the statute.

tiffs seek back pay from the date they first were not paid the highest salary within the Administrator's discretion. These cross motions followed.

■■ As an initial matter, the Government seeks to bar this action for an alleged failure by plaintiffs to timely pursue their administrative remedy, appeal to the FEAA. It is well settled, of course, that such remedies must be exhausted before approaching the court with a civilian pay claim. *E. g., Bur v. United States,* 224 Ct.Cl. ——, ——, 621 F.2d 415, 417 (1980); *Adler v. United States,* 134 Ct.Cl. 200, 203, 146 F.Supp. 956, 958, *cert. denied sub nom. Baker v. United States,* 352 U.S. 894, 77 S.Ct. 131, 1 L.Ed.2d 87 (1956). We have recognized, however, an exception to this rule when a case presents "unusual circumstances" which excuse the non-resort to administrative relief. *E. g., Gentry v. United States,* 212 Ct.Cl. 1, 11, 546 F.2d 343, 348 (1976); *Shubinsky v. United States,* 203 Ct.Cl. 199, 203–204, 488 F.2d 1003, 1006 (1973). In *Shubinsky,* for example, the employing agency had told the employee, Shubinsky, that the agency was to be "liquidated" and that accordingly he would be terminated without an opportunity to displace or "bump" fellow employees with a lower preference who were transferred to other agencies. In fact, the agency had been "reorganized" and plaintiff should have been accorded bumping rights. Shubinsky learned of the agency's mischaracterization after the period expired for appeal to the Civil Service Commission. When presented with the controversy, the Commission dismissed the matter as time barred. In an action here, the Government contended Shubinsky's suit could not lie as administrative remedies had not been properly sought. This court rejected that argument as follows:

> Plaintiff reasonably relied on the administrative misrepresentation that NASL had been "liquidated" and, consequently, that plaintiff's VPA rights were

lost to him. He acted with adequate promptness to perfect his appeal upon learning that the agency had instead been "reorganized" and VPA rights might still be available to him. Under such "unusual circumstances," he cannot be kept out of court for failure to exhaust administrative remedies. *Ainsworth v. United States, supra* [180 Ct.Cl. 166]. [203 Ct.Cl. at 204, 488 F.2d at 1006.]

We think similar logic is applicable here. The present plaintiffs were told by the agency that the 1974 personnel action was of a certain character, *i. e.,* a pay system change. From that agency representation, plaintiffs concluded that no appeal would lie so that whatever appeal rights plaintiffs might have had in 1974 (an issue we discuss *infra*) were lost. Thus, the NASA representations involved herein are little different in effect from the agency representations in *Shubinsky.* As in *Shubinsky,* we today conclude that plaintiffs' action should not be dismissed for a failure to timely exhaust any administrative relief these plaintiffs might have had in 1974.

On the merits, plaintiffs allege the 1974 pay system change constitutes, under applicable regulations, an adverse action when viewed in light of the 1977 pay determination. As plaintiffs were not informed in detail of the adverse action or otherwise afforded the procedures specified in 5 C.F.R. § 752.202 (1974)[2] for adverse actions, the argument goes, the 1974 personnel action was improper and gives rise to a suit for back pay under the Back Pay Act, 5 U.S.C. § 5596 (1976 and Supp. III 1979). Of the personnel actions specified as adverse in 5 C.F.R. § 752.201(b), only 5 C.F.R. § 752.201(b)(4), "Reduction in rank or pay," is arguably applicable. Plaintiffs point to both 5 C.F.R. § 210.102(b)(4)(ii) and Federal Personnel Manual (FPM) Supplement Part 752–1 § S1–5(b)(5) (February 4, 1972) in support of their analysis that a pay system change is a reduction in either rank or pay. Neither provision, however, supports plaintiffs' position.

2. References in this opinion to regulations and other agency promulgations are to the 1974 editions, except as noted.

The first of those sections, 5 C.F.R. § 210.102(b)(4), defines demotion. Plaintiffs apparently allege that term is equivalent to a "reduction in rank," and we assume for purposes of argument the terms' equivalence. The relevant portion of 5 C.F.R. § 210.102(b)(4) provides:

(4) "Demotion" means a change of an employee, while serving continuously within the same agency:

\* \* \* \* \* \*

(ii) *To a position with a lower rate of pay when both the old and the new positions* are under the same type ungraded wage schedule, or *are in different pay method categories.* [Emphasis supplied.]

The critical language requires an employee be changed to a position *with a lower rate of pay* in a different pay method category. Thus, for a personnel action to constitute a demotion, an employee must show not only that the method of pay determination has been altered but also that the new position *at the time of personnel action and without reference to anticipated future developments* has a lower rate of pay than the employee's former position. To read this regulation otherwise is to ignore the phrase "with a lower rate of pay" which modifies "[t]o a [new] position." Thus, and not surprisingly, FPM Supplement Part 752–1 § S1–4c(11) (February 4, 1972), provides that a "change in pay method only" is not a reduction in rank. As we recently wrote in *Triponi v. United States*, 224 Ct.Cl. ——, —— n.1, 633 F.2d 933, 935 n.1 (1980):

Plaintiff raised this issue of reduction in rank in his petition, but has not pressed it in his argument. We agree with defendant that there was no reduction in rank as a result of plaintiff's reassignment. Plaintiff's salary and grade remained the same before and after the reassignment, and this is the overriding criterion in determining comparability of positions in a reassignment. *Comberiate v. United States*, 203 Ct.Cl. 285, 289 (1973). \* \* \*

Reading 5 C.F.R. § 210.102(b)(4) in this manner comports with more general notions that an employee is *entitled* only to the pay of the position to which he has actually been appointed and not that based on a hypothetical or anticipated appointment. *See, e. g., United States v. Testan*, 424 U.S. 392, 402, 406, 96 S.Ct. 948, 955, 957, 47 L.Ed.2d 114 (1976); *United States v. McLean*, 95 U.S. 750, 753, 24 L.Ed. 579 (1877); *Ganse v. United States*, 180 Ct.Cl. 183, 186, 376 F.2d 900, 902 (1967); *Bielec v. United States*, 197 Ct.Cl. 550, 456 F.2d 690, 696 (1972). The 1974 pay system change did not reduce plaintiff in rank within the meaning of 5 C.F.R. § 752.201(b)(4).

Plaintiffs also argue that under FPM Supplement Part 752–1 § S1–5(b)(5), *supra*, the 1974 pay system change was a reduction in pay, even though the rate of pay fixed for plaintiffs' positions was not then altered. That regulation provides examples of reduction in pay, including:

(5) Reassignment of a wage system employee to a new locality with a lower regular wage schedule. When the employee is entitled to salary retention, there may be no immediate loss of pay. However, the action which places him in a new locality with a lower regular wage schedule is a reduction in pay under part 752.

Plaintiffs seek to draw an analogy between the reassignment described in FPM Supplement Part 752–1 § S1–5(b)(5), *supra*, and the 1974 pay system change in that both concern situations where no immediate loss of pay occurs subsequent to the personnel action. As defendant points out, however, there is a fundamental distinction between a personnel action which is *certain* to accomplish a reduction in pay, as where an employee becomes subject to a lower regular wage scale even though the effect of the reduction is postponed through a temporary wage retention, and the situation here, where no such certain reduction was to occur in 1974 or at any other time. Plaintiffs were to be paid at the same rate before and after the system change, and absent a further independent personnel action, that rate would continue and could not be lowered. The plaintiffs can simply not show their rate of pay was altered down-

ward as the natural and direct consequence of the 1974 pay system change itself. At best, plaintiffs can only argue the 1974 action reduced their *potential* for future salary increases. Equating that loss of potential, however, with a reduction in pay hardly squares with our *Triponi* comments, *supra*, or the more general notion we have already discussed, *i. e.*, entitlement only to the pay of the position actually held. Nor does it square with the definition for a related term, "rate of basic pay," provided elsewhere in the regulations. That term, when used in Part 531 of the C.F.R., title "Pay Under the General Schedule," refers to "the rate of pay *fixed* by law or administrative action for the position held by an employee * * *" (emphasis supplied). *See* 5 C.F.R. §§ 531.202(i), 531.302(b), and 531.402(f). It does not, presumably, extend to rates of pay which might be fixed in the future. In light of these considerations and our discussion, *supra*, regarding reductions in rank, it follows, we think, that a reduction in pay occurs only when there is an ascertainable lowering, at the time of the personnel action, of the employee's present or future pay. A reduction in pay does not occur where, as here, a pay system change alters only the method for setting the employee's salary and the employee will be paid (barring a further and unrelated personnel action) at the same rate after the system change as before. We so hold. The 1974 pay system change was neither a reduction in rank nor a reduction in pay and thus was not an adverse action. Accordingly, defendant was not required to effect the system change under the adverse action procedures.

 Plaintiffs suggest a further argument, however, as to why they are entitled to back pay. Regardless of whether the 1974 pay system change was an adverse action, plaintiffs say, NASA did not provide detailed notices or obtain plaintiffs' written consents prior to the change. Detailed notice and written consent are purportedly required by FPM 302(2–10) (June 22, 1965) which provides:

**2–10. CHANGE FROM COMPETITIVE TO EXCEPTED APPOINTMENT**

When an employee proposed for appointment to a position in the excepted service or for noncareer executive assignment is serving under a nontemporary appointment in the competitive service, the agency may not make the excepted appointment or noncareer executive assignment or conversions thereto until the employee has:

(1) Been informed that because the position is in the excepted service it may not be filled by competitive appointment, and that his acceptance of the proposed appointment will take him out of the competitive service while he occupies the position; and

(2) Submitted a written statement to the effect that he understands he is leaving the competitive service voluntarily to accept an appointment in the excepted service.

Plaintiffs cite *Bridges v. Wixon*, 326 U.S. 135, 153, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1945), *Chapman v. Sheridan-Wyoming Co.*, 338 U.S. 621, 629, 70 S.Ct. 392, 396, 94 L.Ed. 393 (1950), and *Bilokumsky v. Tod*, 263 U.S. 149, 155, 44 S.Ct. 54, 56, 68 L.Ed. 221 (1923), to show properly issued regulations bind the defendant and might well have cited what appears to be a leading case for that proposition as applied to employment regulations, *Service v. Dulles*, 354 U.S. 363, 382–389, 77 S.Ct. 1152, 1162–1165, 1 L.Ed.2d 1403 (1957). Plaintiffs, however, cite no authority which holds the FPM provisions, as issued by the Office of Personnel Management or its predecessors, to be binding upon other agencies in the same manner formal regulations duly published in the Federal Register or informal regulations properly issued by the individual agencies would be. As we have remarked before, this question remains open to the most serious doubt.[3] *See*

---

**3.** *Compare Commonwealth of Pennsylvania, Dep't of Transp. v. United States*, 226 Ct.Cl. ──, ── n.6, 643 F.2d 758, 762 n.6, *pet. for cert. filed* May 23, 1981 (unpublished memoranda and manuals may be incorporated into a Federal Highway Administration Project Agreement even though not formally regulations) and *People of the State of California v. United States*,

*Jankowitz v. United States*, 209 Ct.Cl. 489, 496–497 & n.3, 533 F.2d 538, 542–543 & n.3 (1976); *Piccone v. United States*, 186 Ct.Cl. 752, 762 n.12, 407 F.2d 866, 871–872 n.12 (1969). We need not, however, decide whether FPM 302(2–10), *supra*, is a regulation binding upon NASA in the sense understood by the Supreme Court in *Service v. Dulles, supra*. As we read FPM 302(2–10), *supra*, that provision applies to situations in which an employee in the competitive service is appointed to a position in the excepted service so that "his acceptance of the proposed appointment will take him out of the competitive service while he occupies the position." FPM 302(2–10), *supra*, does not purport to reach the situation here, where the employee is to remain in the competitive service. Whatever else may be said of the inartful language used to apprise plaintiffs of the then impending 1974 pay system change, the notices are clear that plaintiffs would remain in the competitive service. That the continuation of plaintiffs in the competitive service was the correct result notwithstanding the NASA Administrator's use of the discretionary authority provided by 42 U.S.C. § 2743(b)(2) to alter the method by which plaintiffs' pay was determined is confirmed by FPM 302(1–1)a(2)(b) (August 12, 1966):

> (b) When a personnel action continues an employee who is in the competitive service and has competitive status in substantially the same assignment but with a change in grade or series of the job occasioned by reorganization or classification action, a *vacancy* does not exist for all practical purposes, and both the employee and the successor position are retained in the competitive service during the employee's incumbency. [Emphasis in original.]

Of similar ilk are FPM 212(4–2)a(1) and (4) (1963). Those sections provide:

### 4–2. EFFECT OF INCUMBENT ON POSITION

213 Ct.Cl. 329, 338, 551 F.2d 843, 848, *cert. denied*, 434 U.S. 857, 98 S.Ct. 180, 54 L.Ed.2d 130 (1977) (same) *with Sun City Community Hospital, Inc. v. United States*, 224 Ct.Cl. ——, —— n.2, 624 F.2d 997, 1000 n.2 (1980) (the Medicare Provider Reimbursement Manual is

a. A position listed under Schedule A, B, or C is in the excepted service when held by an employee with competitive status except that under the following circumstances positions listed in the schedules remain in the competitive service as long as they are held by:

(1) Employees with competitive status under nontemporary appointments at the time their positions are first listed under Schedule A, B, or C.

\* \* \* \* \* \*

(4) Employees with competitive status under nontemporary appointments in positions which are successors to positions in which the employees served with competitive status under nontemporary appointments, although the grade or classification series of the positions may have been changed by classification or reorganization. (In these cases, there have been no vacancies to fill by excepted appointments, and the employees remain in practically the same positions. Thus, the employees and the successor positions are in the competitive service.)

Although we leave to another day the exact scope of FPM 302(2–10), *supra*, we hold that provision has no application to personnel actions such as the 1974 pay system change which do not move an employee from the competitive service to the excepted service. Thus, irrespective of whether provisions of the Federal Personnel Manual alone create entitlement in civilian pay cases, these plaintiffs have no claim based on FPM 302(2–10), *supra*, for back pay.

■ Plaintiffs further contend the 1977 pay determination was beyond the Administrator's discretion and hence subject to our review. Plaintiffs' theory is that the Administrator, by "promising" in the notices of the 1974 pay system change that plaintiffs' salaries would not be reduced, waived

not an administrative regulation) and *Caterpillar Tractor Co. v. United States*, 218 Ct.Cl. 517, 523, 589 F.2d 1040, 1043 (1978) (an informal Treasury tax publication is simply a guide and taxpayer relies thereon at peril).

any future discretion to set plaintiffs' salaries at other than the maximum GS level. Leaving aside the dearth of literal language in the notices to support this result, and assuming *arguendo* that the NASA Administrator could so limit his own and his successors' discretion, plaintiffs' argument must nonetheless fail. Subsequent to the 1974 pay system change, plaintiffs clearly remained in the competitive Civil Service and thus remained entitled to the protections that status affords, such as required adverse action procedures and the so-called "bumping rights" in case of a reduction in force. *Compare* this status with the holding in *Batchelor v. United States*, 169 Ct.Cl. 180, 182–184, *cert. denied*, 382 U.S. 870, 86 S.Ct. 147, 15 L.Ed.2d 109 (1965) (dismissals of excepted service employees generally are unreviewable). If these employees retained the right, as their reading supposes, to a GS-set salary as well, the 1974 personnel action becomes meaningless for plaintiffs would be in exactly the same position before and after that action. While plaintiffs might now wish that result, we decline to reduce *ad absurdum* the 1974 action. As we conclude the NASA Administrator retained the discretion to set these plaintiffs' salaries, it follows that we are without jurisdiction to review the 1977 salary determination. Salary determinations wholly within an agency's discretion are beyond the scope of the Tucker Act, 28 U.S.C. § 1491 (1976). *See Adair v. United States*, 648 F.2d 1318 (at page 1322–1323). *See generally Shull v. United States*, Ct.Cl. No. 16–78 (order entered July 10, 1981, at 7–8), and cases cited thereat.

Based on the foregoing, we conclude that the 1974 pay system change was not an adverse action and that these plaintiffs were therefore not entitled to the procedures required by 5 CFR § 752.202. We also conclude that FPM 302(2–10), *supra*, is inapplicable to personnel actions which retain an employee in the competitive Civil Service. Thus, the NASA Administrator was not required to secure prior written approval from plaintiffs or to provide them the detailed notice specified in that FPM provision. Further, we conclude that as the NASA Administrator had full discretion under 42 U.S.C. § 2743(b)(2) to set plaintiffs' salaries after the 1974 pay system change, plaintiffs have no claim in this court based on the 1977 pay determination.

## CONCLUSION

Accordingly, defendant's cross motion for summary judgment should be and is hereby granted. Plaintiffs' motion for summary judgment should be and is hereby denied. The petition is hereby dismissed.