**William C. McENERY, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent,**

**and**

**United States Postal Service, Intervenor.**

**No. 91–3142.**

United States Court of Appeals, Federal Circuit.

May 12, 1992.

Rehearing Denied July 23, 1992.

Alan Moss, Law Offices of Alan Moss, San Francisco, Cal., argued for petitioner.

Patricia A. Price, Merit Systems Protection Bd., Washington, D.C., argued for respondent. With her on the brief were

Mary L. Jennings, Acting General Counsel and Martha B. Schneider, Asst. General Counsel.

Sheryl L. Floyd, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., represented the intervenor. Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Sharon Y. Eubanks, Asst. Director, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., were on the brief for the intervenor. Also on the brief was Major Raymond Jennings, Office of the Judge Advocate General, Dept. of the Army, of counsel.

Before ARCHER, MICHEL, and PLAGER, Circuit Judges.

PLAGER, Circuit Judge.

William C. McEnery petitions for judicial review of the initial decision of the Administrative Judge (AJ) dated August 7, 1990, Docket No. SF34439010567, which upon denial of review by the Merit Systems Protection Board (MSPB or Board) became the Board's final decision. 5 C.F.R. § 1201.-113(b) (1991). The AJ dismissed McEnery's appeal for lack of jurisdiction, since McEnery failed to demonstrate a reduction of pay or grade. 5 U.S.C. §§ 7511–7513 (1988). We *affirm*, and for the reasons set forth below, under Rule 38 of the Federal Rules of Appellate Procedure direct petitioner to pay to the government costs plus $500 damages for the filing of a frivolous appeal.

## BACKGROUND

McEnery served as the Director of the Postal Service's Facilities Service Center, Western Region, from 1981 to 1989. This position is classified as a Postal Career Executive Service Level I (PCES I) position. As of March 1989, McEnery was paid a salary of $80,000. In 1989, the salary range for PCES I positions was $62,000–$87,000; in 1990, the range was increased to $64,000–$93,000. On August 12, 1989, McEnery was reassigned to the position of Program Manager, Western Region Requirements and Planning Division; prior to

McEnery's reassignment, this position was reclassified from a EAS–24 level upward to a PCES I level.[1] In April of the following year, McEnery was informed that he would not be receiving a pay raise since his current salary was $10,000 beyond the range of salaries for positions with responsibilities comparable to his new position. All PCES I Directors (McEnery's former job peers) received uniform pay raises at that time.

McEnery filed an appeal with the MSPB on May 18, 1990, alleging jurisdiction based on a reduction of pay and grade under 5 U.S.C. §§ 7511–7513 (1988). McEnery's argument is based in part upon an alleged oral promise by his immediate supervisor that, despite his reassignment to a position of lesser responsibility, he would receive future pay raises commensurate with those of his former job peers. The AJ held that McEnery's reassignment did not constitute a constructive removal or a constructive demotion, and that prior case law foreclosed any argument that the reassignment from one PCES I position at $80,000 per year to another PCES I position of $80,000 per year constituted a reduction of pay or grade. Further, the alleged promise of McEnery's supervisor could not confer jurisdiction in the absence of a reduction of pay or grade. The decision of the AJ became the final decision of the Board on December 13, 1990, when the full Board denied McEnery's petition for review.

## DISCUSSION

■ As a preliminary matter, we note that McEnery objects that the AJ refused to order discovery of a letter from the supervisor allegedly confirming that the refusal to grant a pay raise violated the terms of the transfer agreement. However, "[t]his court will not overturn the board on [procedural matters relative to discovery and evidentiary matters] unless an abuse of discretion is clear and is harmful." *Curtin v. Office of Personnel*

1. The Board has not been granted appellate jurisdiction over cases concerning the proper classification of a position. *Saunders v. Merit Systems Protection Bd.*, 757 F.2d 1288, 1290 (Fed.

*Management*, 846 F.2d 1373, 1378 (Fed.Cir. 1988). The AJ here determined that the proffered evidence would not be relevant, since it related only to a salary determination which was purely discretionary on the part of the Postal Service. *Initial decision* at 4. As for McEnery's potential use of this evidence to prove the *involuntariness* of the personnel action, the AJ correctly noted that the issue was irrelevant when the personnel action was a reassignment and not a removal. *Initial decision* at 2; *Manning v. Merit Systems Protection Bd.*, 742 F.2d 1424, 1427 (Fed.Cir. 1984). Thus, the reasonableness of McEnery's reliance on the alleged promise is not reached.

■ We now reach the main thrust of McEnery's appeal. McEnery argues before this court that his reassignment to a position of lesser responsibility (previously categorized as an EAS–24 position) was a reduction in grade. However, this court has plainly held that a reassignment from a position of greater to lesser responsibility within the same grade is *not* a "reduction in grade" within the meaning of 5 U.S.C. § 7511. *Wilson v. Merit Systems Protection Bd.*, 807 F.2d 1577, 1580–1581 (Fed. Cir.1986) (PCES I positions).

■ Alternatively, McEnery argues that his reassignment to a PCES I position with lesser responsibility will inherently result in a reduction in his *future* pay—i.e. foreclosure of future pay raises. A reduction in pay must be ascertainable *at the time of the personnel action*, not at some future date. *Garbacz v. United States*, 656 F.2d 628, 633, 228 Ct.Cl. 309 (1981); *Wilson*, 807 F.2d at 1582; *Chaney v. Veterans Admin.*, 906 F.2d 697, 698 (Fed.Cir.) *cert. denied* — U.S. ——, 111 S.Ct. 440, 112 L.Ed.2d 423 (1990). At least in his opening brief, petitioner made no argument that such potential "reduction" in future pay was ascertainable at the time of the personnel action. With regard to this issue, McEnery has presented inconsistent char-

Cir.1985). *See also, Schaffer v. Merit Systems Protection Bd.*, 751 F.2d 1250, 1252 (Fed.Cir. 1985).

acterizations of the alleged promise of his supervisor. Prior to the Government's citation to *Garbacz* and its progeny, he characterized the promise as one made by the supervisor and subsequently broken by the Executive Compensation Committee (ECC). Faced with the burden of having to show an ascertainable reduction *at the time of the personnel action,* McEnery recharacterized the supervisor's promise as one made in bad faith—i.e., since the Postal Service never had any intent of keeping the promise, the effect on McEnery was "ascertainable" at that moment. In any event, this argument is not persuasive because the reduction must be ascertainable at the time of the personnel action *"without reference to anticipated future developments." Garbacz,* 656 F.2d at 633 (emphasis in original). Speculation about the Postal Service's intent to keep its promise and its subsequent actions certainly cannot be said to be "without reference to anticipated future developments."

We note that, although the AJ specifically grounded the reduction of pay holding on *Garbacz,* McEnery failed to mention this case in the initial brief, and in the reply brief characterized the case as "irrelevant", despite the fact that this case subsequently has been cited as authority for this very point in *Wilson* and *Chaney.* Nor did McEnery mount a frontal attack and argue why this court should overturn otherwise controlling precedent.

■ McEnery's final argument in this appeal is only slightly less frivolous than the preceding two examples. He analogizes the alleged future pay decrease (or more accurately, non-increase) to the "constructive demotion" theory of *Russell v. Department of Navy,* 6 MSPB 585, 6 M.S.P.R. 698 (1981). Simply stated, the MSPB in *Russell* held that a transfer from one position to another was a "constructive demotion" when the first position was misclassified at a lower grade. *Id.* 6 M.S.P.R. at 711. This theory has been applied to Postal Service employees, even though such employees are not members of the competitive service. *Shadid v. United States Postal Service,* 41 M.S.P.R. 223, 226 (1989).

In both *Russell* and *Shadid,* the constructive demotion theory was limited to errors in classification of the *initial* position. McEnery makes no argument regarding the classification of the initial PCES I Director position. Rather, he argues "by parity of reasoning" that the constructive demotion theory applies to his situation, since the *second* position was classified upward. This argument fails for three reasons.

As an initial matter, McEnery's argument fails to overcome the distinction between the salary increase a party *would* receive in situations when the initial position is erroneously classified, and the salary increase which McEnery *might or might not* receive in his second position. In other words, the argument fails because there is no way of predicting what McEnery's pay would be in the future—especially in light of the fact that the postal service has been specifically exempted by Congress from the classification principles of 5 U.S.C. Chapter 51, and further in light of the creation of the ECC to shift the Postal Service to a strictly merit-based compensation system.

More fundamentally, the expansion of the constructive demotion theory which McEnery proposes flies in the face of specific Congressional intent. As we stated in *Wilson,* 807 F.2d at 1581, "Congress intended adverse action rights such as the right to appeal a reduction in pay to be given a narrow construction." In response, courts have interpreted the term 'basic rate of pay' restrictively. Further, the Postal Service is "subject to only limited application of Federal employment laws." *Id.* at 1579. The Postal Career Executive Service system was created by Congress expressly to "promote flexibility in executive assignments to enable the agency to accomplish its mission in an effective and expeditious manner." *Id.* McEnery's proposed expansion of the "constructive demotion" theory clearly flies in the face of these Congressional objectives.

Finally, McEnery's proposed expansion of the constructive demotion theory founders upon this court's recent decision in *Art-*

*mann v. Department of Interior*, 926 F.2d 1120 (Fed.Cir.1991). In *Artmann*, this court reviewed *Russell* approvingly, but made the following cautionary comments:

> The Board's theory [of constructive demotion] is that if a position originally was classified erroneously or a change in classification standards would have mandated a change in grade, it was proper to view the employee as if that error had been rectified, so that the employee would be occupying a position with a higher grade than he actually had. The employee's grade therefore was reduced when the employee was reassigned at the same grade because, had the position been properly classified at the higher grade, the reassignment would have reduced the grade.

> This interpretation by the Board of the statutory term "reduction in grade" is a reasonable implementation of the Board's broad authority to interpret and apply the statutory provisions it administers. (Citation omitted.) Moreover, *since the Board created the concept of "constructive demotion," the agency also has considerable discretion to define the parameters of the concept* (emphasis added).

*Id.* at 1123. After reviewing the MSPB's factual analysis, the Federal Circuit then stated:

> This narrow scope of "classification error" accords with and furthers the congressional policy reflected in the Reform Act to "increase the flexibility of agencies to assign employees to positions and duties where they are needed without having to take an adverse action against an employee when the job title or duties have changed, but the grade has not." S.Rep. No. 969, 95th Cong., 2d Sess. 49–50 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2771–72.

*Id.*

*Artmann* was decided on February 20, 1991. McEnery's initial brief, filed on April 19, 1991, made no mention of the case. Although it was cited in the MSPB brief, McEnery again failed to mention or discuss it in his reply brief, filed July 19, 1991. Although *Artmann* addresses reductions in grade, no principled distinction can be made for McEnery's proposed constructive reduction of future discretionary pay.

We note that the AJ summarily disposed of McEnery's argument.[2] As this court's discussion in *Artmann* makes clear, we will defer to the Board's interpretations of the constructive demotion theory when the interpretations accord with Congressional intent. McEnery's proposed expansion of the constructive demotion test to questions regarding future discretionary *pay* clearly undercuts the Congressional intent that agencies maintain flexibility. Given the recent discussion in *Artmann* of both the statutory framework and this court's expressed intent to defer to the MSPB in situations such as this case, we fail to see what McEnery hoped to accomplish with his appeal.

In *Asberry v. United States Postal Service*, 692 F.2d 1378, 1382 (Fed.Cir.1982), the Federal Circuit gave a clear warning that frivolous appeals would "result in imposition of damages and costs upon appellant and counsel in accordance with Rule 38." Imposition of sanctions is a serious matter; the Court is aware of the burden the threat of sanctions places upon the attorney-client relationship and upon the bar's willingness to propound novel legal theories which might potentially advance the law. Nonetheless, appeals which have no hope of succeeding place an unnecessary and intolerable burden on judicial resources.

In light of this balancing approach, we note that we have applied sanctions for failure to reference or discuss controlling precedents in an opening brief, *Klein v. Department of Transportation, FAA*, 768 F.2d 336, 338 (Fed.Cir.1985). Further, we have noted that the test of frivolity is an objective one—McEnery's good faith in pursuing his arguments to the appellate

---

**2.** The AJ noted that McEnery's $80,000 salary "remains well within the basic rate of pay range for a PCES I employee." *Initial Decision* at 4.

level cannot overcome clear law and dispositive authority. *In re Perry*, 918 F.2d 931, 934 (Fed.Cir.1990) *cert. denied* —— U.S. ——, 112 S.Ct. 49, 116 L.Ed.2d 27 (1991). Further, even the existence of one potentially non-frivolous argument cannot preclude a Rule 38 sanction when all other arguments are patently frivolous. *Id.* at 934–35. McEnery's failure to cite and discuss either *Garbacz* and *Chaney* in his opening brief and *Artmann* at least in his reply brief is inexcusable, as is his about-face on key facts. His obfuscation of other issues with clearly frivolous arguments, e.g. that *Wilson* did not control the issue of reduced responsibilities, was most unhelpful. Accordingly, we award costs plus $500 damages for which petitioner and his counsel are jointly and severally liable.

## CONCLUSION

The decision of the MSPB is affirmed. AFFIRMED.