Constance **HORNER**, Director, Office of Personnel Management, Petitioner,

v.

Joseph D. **JEFFREY**, Respondent.

No. 86–697.

United States Court of Appeals, Federal Circuit.

July 2, 1987.

---

Stephen J. McHale, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for petitioner. With him on the brief, were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan.

Kathleen G. Vaght, Noto, Oswald, Hoffheimer, Eisman & Miller, Washington, D.C., argued for respondent. Robert L. Oswald, Noto, Oswald, Hoffheimer, Eisman & Miller, Washington, D.C., was on the brief, for respondent.

Before MARKEY, Chief Judge, FRIEDMAN, RICH, and DAVIS, Circuit Judges, BENNETT, Senior Circuit Judge, SMITH, NIES, NEWMAN, BISSELL, and ARCHER, Circuit Judges.[*]

BENNETT, Senior Circuit Judge.

In accordance with 5 U.S.C. § 7703(d) (1982),[1] Constance Horner, as Director of the Office of Personnel Management (OPM or agency), petitioned this court for review of the final decision of the Merit Systems Protection Board (MSPB or board) in *Jeffrey v. Office of Personnel Management*, 28 M.S.P.R. 81 (1985). In its *Jeffrey* decision, the MSPB reversed an OPM decision which determined that Mr. Jeffrey was not entitled to credit under the Civil Service Retirement Act (CSRA) for time spent as a midshipman at the United States Naval Academy which was not used in calculating his military retirement benefit. This court granted the OPM's petition for review and, for the reasons outlined in the following opinion, we reverse the decision of the board.

## BACKGROUND

The background facts are not in dispute and can be summarized as follows. Appellee Joseph D. Jeffrey (Jeffrey) was a midshipman at the United States Naval Academy from June 16, 1938, until December 18, 1941, at which time he entered upon active duty with the United States Navy. Jeffrey retired from active duty with the Navy on February 29, 1964, and was credited with 22 years, 2 months, and 12 days of military service as the basis for his military retired pay. His time as a midshipman at the Naval Academy was not credited for military retirement purposes. Subsequent to his retirement from the Navy, Jeffrey was appointed to a civil service position with the Federal Aviation Agency on April 12, 1965, and he served with that agency and its successor agencies until he voluntarily retired from the civil service on September 4, 1982. Upon his retirement from the civil service position, Jeffrey received credit for 17 years, 4 months, and 23 days of civilian service.

Jeffrey requested that the OPM grant him civil service retirement credit for his time spent as a midshipman. On October 20, 1983, the OPM denied his request for CSRA credit for his midshipman time and then confirmed its denial on reconsideration on September 5, 1984. In denying the request for reconsideration, the OPM stat-

---

[*] This case was argued before a panel consisting of Davis, *Circuit Judge,* Bennett, *Senior Circuit Judge,* and Newman, *Circuit Judge,* on August 5, 1986. An active judge not on the panel suggested in banc consideration and the court so decided the case on the record before the panel together with the taped arguments of counsel.

1. 5 U.S.C. § 7703(d) provides, in pertinent part:
   The Director of the Office of Personnel Management may obtain review of any final order or decision of the Board by filing a petition for judicial review in the United States Court of Appeals for the Federal Circuit if the Director determines, in his discretion, that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel managment and that the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive.... The granting of the petition for judicial review shall be at the discretion of the Court of Appeals.

ed that the version of 5 U.S.C. § 8332(c) in effect at the time of Jeffrey's retirement from federal service in September 1982[2] did not allow credit for his time as a midshipman since he had not waived his military retired pay and he did not meet any of the listed exceptions. The OPM further noted its view that a subsequent amendment to section 8332(c) which would allow civil service retirement credit for military service time for which no military retirement pay credit was awarded did not take effect until October 1, 1982, and was therefore inapplicable to Jeffrey since it was after the effective date of his retirement.[3] The OPM also rejected Jeffrey's reliance on judicial precedent decided before October 1, 1956, since the predecessor statute to 5 U.S.C. § 8332(c) in existence at that time[4] was similar to the post-October 1, 1982, version of the statute. In short, the OPM's position was that military service time not used in the computation of military retirement pay could be credited for civil service retirement pay only if the retirement from federal service occurred before October 1, 1956, or after October 1, 1982.

Jeffrey appealed to the MSPB. In the initial decision, the presiding official re-

versed the OPM, finding that the agency had offered no evidence nor was there any legislative history to support the contention that Congress had deliberately changed the law when the wording of 5 U.S.C. § 8332(c) was changed in 1956. The presiding official ruled that "OPM's interpretation of the law would have the effect of denying *any* credit under *any* system for the 3½ years of [Jeffrey's] Academy service. This was not the intent of Congress prior to 1956 nor after 1982." (Emphasis in original.)

The OPM petitioned the full board for review, which was denied by a divided board.[5] In denying the petition for review, the board's opinion relied on the pre–1956 judicial interpretations of the relevant statutes, finding that Congress only sought to bar double retirement credits for periods of military service. 28 M.S.P.R. at 84. The board also agreed that nothing in the legislative history of the 1956 amendment indicated a congressional intent to alter the existing law as to civil service retirement credit for periods of military service which are not part of the individual's military retirement benefits. *Id.* Therefore, the board concluded that Jeffrey was entitled

---

2. As of the date of Jeffrey's retirement, 5 U.S.C. § 8332(c) (1976) provided:

(c) Except as provided by subsection (d) of this section, an employee or Member shall be allowed credit for periods of military service before the date of the separation on which title to annuity is based. However, if an employee or Member is awarded retired pay on account of military service, his military service may not be credited unless the retired pay is awarded—

(1) on account of a service-connected disability—

(A) incurred in combat with an enemy of the United States; or

(B) caused by an instrumentality of war and incurred in line of duty during a period of war as defined by section 301 of title 38; or

(2) under chapter 67 of title 10.

3. The October 1, 1982, amendment to 5 U.S.C. § 8332(c) read as follows:

(2) If an employee or Member is awarded retired pay based on any period of military service, the service of the employee or Member may not include credit for such period of military service unless the retired pay is awarded—

(A) based on a service-connected disability—

(i) incurred in combat with an enemy of the United States; or

(ii) caused by an instrumentality of war and incurred in line of duty during a period of war as defined by section 301 of title 38; or

(B) under chapter 67 of title 10.

4. The pre-October 1, 1956, version of the provision subsequently contained in section 8332(c) was contained in 7 U.S.C. § 707 (1952) (initially enacted as part of the Civil Service Retirement Act of May 29, 1930):

[I]n the case of an officer or employee, however, who is eligible for and receives retired pay on account of military or naval service, the period of service upon which such retired pay is based shall not be included [in the determination of his civil service retirement benefits], except that in the case of an officer or employee who is eligible for and receives retired pay on account of a service-connected disability incurred in combat with an enemy of the United States or resulting from an explosion of an instrument of war, the period of the military service shall be included....

5. Chairman Ellingwood dissented from the board opinion; however, he did not write a separate opinion.

to civil service retirement credit for his academy time since it was clear that there would be no double credit for that time.[6]

The board subsequently denied OPM's request to have the board's final decision stayed until judicial review by this court could be obtained. *Jeffrey v. Office of Personnel Management*, 28 M.S.P.R. 434 (1985). Review by this court was sought by the Director of the OPM on the grounds that "the Board's decision will have a substantial impact on a civil service law."[7] 5 U.S.C. § 7703(d). This court granted the petition for review. The central issue for review is whether Jeffrey is entitled to civil service retirement credit for his time as a midshipman at the Naval Academy which was not used in the calculation of his military retirement benefit.

## DISCUSSION

### I.

Each of the parties involved in the present case agrees, quite properly, that the plain language of a statute should conclusively settle the issue before this court. *See, e.g., Bread Political Action Committee v. Federal Election Commission*, 455 U.S. 577, 580, 102 S.Ct. 1235, 1237–38, 71 L.Ed.2d 432 (1982); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Southeastern Community College v. Davis*, 442 U.S. 397, 405 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979); *Darsigny v. Office of Personnel Management*, 787 F.2d 1555, 1557 (Fed.Cir. 1986) ("the starting point for interpreting a statute is the language itself"); *see also Selman v. United States*, 204 Ct.Cl. 675, 498 F.2d 1354, 1356 (1974) ("a clear and unambiguous statute speaks for itself"). However, in their desire to discern the legislative intent of Congress when it enacted, amended, and reamended the Civil Service Retirement Act, the parties did not give proper weight to the plain and unambiguous language of 10 U.S.C. § 971(b)(1) (1982 & Supp. III 1985). Since section 971(b)(1) determines the outcome of this case, the parties' extensive examination of the varying language of 5 U.S.C. § 8332(c) (1982) and its predecessor statutes is misplaced and unnecessary.

The prior OPM and MSPB decisions in this case and the briefs of both parties in this appeal each begin their analyses by citing 10 U.S.C. § 971(b)(1). Unfortunately, each analysis overlooks the importance of that statute to the resolution of the specific issue presented in this case. That section of the statute reads as follows:

(b) In computing length of service *for any purpose —*

(1) no officer of the Navy or Marine Corps may be credited with service as a midshipman at the United States Naval Academy or as a cadet at the United States Military Academy, United States Air Force Academy, or United States Coast Guard Academy, if he was appointed as a midshipman or cadet after March 4, 1913.... (Emphasis added.)

10 U.S.C. § 971(b)(1) (1982).

The critical point is that 10 U.S.C. § 971(b)(1) does not limit the bar on the use of time spent as a midshipman in computing length of military service merely to the computation of military retirement pay. It bars the use of military academy service as a cadet or midshipman in computing length of military service for *all* purposes. Section 971(b) contains no ambiguity in need of clarification; in fact, the statute's language cannot be clearer. The OPM, the board, and Jeffrey have all avoided the plain language of the statute by improperly reading artificial limitations into the statute's language.

However, despite the parties' attempts to do so, the language of 10 U.S.C. § 971(b) is

---

6. OPM's contention that the OPM interpretation of section 8332(c) was entitled to deference was rejected by the MSPB on the grounds that the predecessor agency to the OPM, the Civil Service Commission, refused to be bound by prior decisions in other cases involving similar facts. 28 M.S.P.R. at 85.

7. The appeal to this court in *Horner v. Grey*, Misc. Docket No. 98, M.S.P.B. No. DE08318510176, was stayed by Order dated May 19, 1986, pending resolution of this case.

not limited solely to military retirement purposes or to military purposes. The statute's "for any purpose" language must therefore include calculations of length of military service for purposes of determining civil service retirement entitlements. In the case before us, the uncredited "military service" results from military academy attendance as a cadet or midshipman. Thus, it does not matter whether 5 U.S.C. § 8332 does or does not permit credit for periods of military service that were not considered in calculating an employee's military retirement pay because time spent at a military academy as a cadet or midshipman is not to be included as part of the employee's military service in the first place.

The language quoted above from 10 U.S.C. § 971(b) is the latest version of Congress's unwavering intent to prohibit the use of military academy time as military service time for any purpose. The bar against the use of military academy time as military service time for any purpose has been present in statutes since at least 1912. *See* Act of August 24, 1912, Pub.L. No. 338, ch. 391, 37 Stat. 569, 594; Act of March 4, 1913, Pub.L. No. 433, ch. 148, 37 Stat. 891. While the title and location of the relevant provisions have not remained constant,[8] the material provisions of the statute have never been altered. It is inescapable that at all times since 1913 Congress has clearly and permanently intended to prohibit the use of military academy time in calculating the length of military service *for any purpose.*

In *Jacobs v. United States,* 680 F.2d 88 (9th Cir.1982), the Ninth Circuit recently looked to the legislative history of 10 U.S.C. § 971 when deciding whether the statute applied to Coast Guard officers who spent time at the Coast Guard Academy. While the issue in *Jacobs* was whether the time as a Coast Guard cadet could be used for the purposes of military retirement pay itself, the legislative history outlined there is instructive in the present case.

> Officers of the Army and Navy have been expressly prohibited since 1913 from counting cadet or midshipman time in computing length of service. *See* Act of August 24, 1912, Pub.L. No. 338, ch. 391, 37 Stat. 594; Act of March 4, 1913, Pub.L. No. 433, ch. 148, 37 Stat. 891. Congress found that the previous rule of counting cadet time "discriminat[ed] against the civilian appointee who pays for his own preliminary education and in favor of the graduate of the Military Academy who is educated for his commission at the expense of the Government." H.R.Rep. No. 270, at 66, 62nd Cong.2d Sess. (1912) (discussed in *United States v. Noce,* 268 U.S. 613, 618, 45 S.Ct. 610, 611, 69 L.Ed. 1116 [1925]). The House Report notes that "this preposterous practice ... of counting the period of cadet service in computing length of service ... is as indefensible as it is illogical and unfair...." Report at 65–66.

*Id.* at 89–90.

It is equally illogical and unfair to allow a retired military officer who was educated at the public's expense at one of the service academies and who subsequently enters government civil service upon his retirement from the military to receive credit for his military academy time for the purposes of civil service retirement when he could not do so upon retirement from the military. The educated-at-his-own-expense military retiree cannot receive this windfall.

---

**8.** Congress subsequently confirmed the prohibition against such longevity credits in appropriation acts for the Army, *e.g.,* Act of June 7, 1924, ch. 291, 43 Stat. 477, 481; Act of Feb. 12, 1925, ch. 225, 43 Stat. 892, 896; Act of April 15, 1926, ch. 144, 44 Stat. 254, 257, as well as in appropriation acts for the Navy, *e.g.,* Act of May 28, 1924, ch. 203, 43 Stat. 182, 194; Act of Feb. 11, 1925, ch. 209, 43 Stat. 861, 872; Act of May 21, 1926, ch. 355, 44 Stat. 591, 604. By 1956, the bars against the use of military academy time in calculating length of service for any purpose were found in 10 U.S.C. § 3682 (1958) (Army), 10 U.S.C. § 6116 (1958) (Navy and Marine Corps), and 10 U.S.C. § 8682 (1958) (Air Force). These statutes were later repealed when Congress consolidated them into 10 U.S.C. § 971(b) (1970) which used the same language in subsection (b)(1) which is quoted in the text of this opinion. A 1984 amendment to 10 U.S.C. § 971 added a new subsection expressly to cover the Coast Guard, but left the text of subsection (b)(1) unchanged.

The unjustified and restricted interpretation of 10 U.S.C. § 971(b) employed by the parties and the MSPB allows through the back door what Congress explicitly and clearly legislated against at the front door. In light of the significant number of academy-educated military retirees who subsequently enter the government civil service, the resulting and unintended cost to the government may well be on the order of the millions of dollars cited by the OPM.

As noted previously, the parties spent considerable effort interpreting the various versions of the provisions of the Civil Service Retirement Act. However, such analysis and discussion were unnecessary and resulted from the failure of all concerned to utilize the proper definition of "military service" as it was intended by Congress to be used for all purposes, including the Civil Service Retirement Act.[9]

■ Congress provided a definition of "military service" in the subchapter covering the Civil Service Retirement Act, but that definition does not alter the method to calculate length of military service provided in 10 U.S.C. § 971(b) or suggest that the OPM has the authority to do so. 5 U.S.C. § 8331(13) states that " 'military service' means honorable active service ... in the armed forces." The explanatory notes accompanying the statute note that the term "armed forces" as used in section 8331(13) includes the Army, Navy, Air Force, Marine Corps, and Coast Guard as provided in 5 U.S.C. § 2101(2) (1982). Since 10 U.S.C. § 971(b) provides Congress's definition of length of service for any purpose of each of the branches of the armed forces listed in section 2101(2), there can be no remaining legislative authority delegated to the

OPM to supplement or alter the clear and express definitions provided by these statutes.

Furthermore, it is improper to attempt to harmonize title 5 and title 10 by limiting 10 U.S.C. § 971(b) solely to military purposes. First, such a construction would require reading "for any purpose" to mean "for any military purpose," which is not the wording chosen or the result intended by Congress. The task of rewriting a statute is and should remain a duty reserved for Congress. *See, e.g., Marchetti v. United States*, 390 U.S. 39, 60 n. 18, 88 S.Ct. 697, 708–09 n. 18, 19 L.Ed.2d 889 (1968). Second, central to any such attempt at harmonization is the conclusion that since the predecessor to section 971(b) existed before the creation of the civil service retirement system, its clear language did not apply to civil service retirement matters which subsequently arose. However, this latter conclusion can only be correct if the provisions of the predecessor to section 971(b) had been implicitly repealed by the subsequently enacted civil service retirement statutes, at least with respect to the effect of section 971(b) on civil service retirement.

■ Repeals by implication are not favored and can only be justified when the earlier and later statutes are irreconcilable. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 189–90, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978); *Morton v. Mancari*, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974); *Lovshin v. Department of the Navy*, 767 F.2d 826, 842 (Fed. Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1523, 89 L.Ed.2d 921 (1986). "[W]hen two statutes are capable of co-existence, it

---

9. The error of assuming the term "military service" as used in the Civil Service Retirement Act could include military academy time is made consistently throughout the parties' briefs and the OPM and MSPB opinions. To illustrate this point directly, assume a person attended the United States Naval Academy for 4 years and served on active duty as a naval officer for 20 years before retiring. Under 10 U.S.C. § 971(b), the length of military service of that person would be 20 years, not 24 years; the 4 years of academy time is simply not counted as military service. In that example, all 20 years of the active military service would be credited toward military retirement, so there would be no excess military service. By contrast, if the same person had served on active duty for 35 years before retiring, he or she would have 35 years of military service (not 39), of which only 30 years could be credited for the purposes of military retirement. The amount of excess military service (that not credited toward military retirement) in the latter case would be only 5 years, not 9 years. Military academy time can never constitute excess military service, regardless of whether excess military service is creditable for civil service retirement purposes.

is the clear duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Mancari*, 417 U.S. at 551, 94 S.Ct. at 2483. Not only are the two statutes here capable of co-existence, but the alleged point of conflict would result solely from the attempted method of harmonization, an improper limitation of the scope of 10 U.S.C. § 971(b). In actuality, there is no conflict between the statutes at all since the Civil Service Retirement Act does not alter the definition of length of military service set forth in section 971(b).

The Court of Claims cases cited by the parties only deal with civil service credit for excess military service as a commissioned officer on active duty beyond what was needed for military retirement purposes. *See Hobson v. United States*, 151 Ct.Cl. 201 (1960); *Bond v. United States*, 133 Ct.Cl. 204, 135 F.Supp. 433 (1955), *cert. denied*, 351 U.S. 974, 76 S.Ct. 1031, 100 L.Ed. 1491 (1956); *Prentiss v. United States*, 123 Ct.Cl. 225, 105 F.Supp. 989 (1952). None of the Court of Claims cases involve civil service credit for time spent by a retired officer as a cadet or midshipman at a service academy. In fact, no judicial precedent has been found discussing the issue presented in the instant case.[10] That the OPM and the board agree that the pre–1956 and the post–1982 versions of 5 U.S.C. § 8332(c) permit credit for excess military service is irrelevant when it is academy time as a cadet or midshipman that is at issue. As the Supreme Court stated in *National Labor Relations Board v. Brown*, 380 U.S. 278, 291–92, 85 S.Ct. 980, 988 13 L.Ed.2d 839 (1965):

> Reviewing courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congres-

sional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions.... "The deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress." (quoting *American Ship Building Co. v. National Labor Relations Board*, 380 U.S. 300, 318 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965)).

Here, since the decision not to consider military academy time as military service for any purpose had already been made by Congress, we would be shirking our judicial role to ignore OPM's contrary view simply because neither party chose to recognize the error of that view. In the initial MSPB decision, the presiding official observed that the OPM's interpretation of the 1956 amendments would have the effect of denying any credit under any system for the years of academy service. Although not for the reasons advanced by OPM, denial of any credit for military academy service as a cadet or midshipman is exactly what Congress intended at all times, not just between 1956 and 1982.[11] The lack of evidence as to Congress's intent in the legislative history accompanying the 1956 amendment to 5 U.S.C. § 8332(c) is not surprising when it is realized that the use of academy time as military service time had long been decided in the negative by the predecessor statutes to 10 U.S.C. § 971(b).

## II.

The only contrary authority to the holding reached by this opinion is the portion of the Federal Personnel Manual (FPM) which states that "service as a midshipman ...

---

**10.** The 1967 letter decision of the Civil Service Commission appeals board noted by the board and some of the nine decisions listed in the 1956 GAO audit may be the only potential precedent on point, but citations were not supplied by the board or the parties and it is doubtful whether any of them specifically address the use of military academy time for civil service retirement.

In any event, those decisions would not be binding on this court.

**11.** Furthermore, since Congress clearly intended that military academy time not be considered military service at all and thus not count for credit under either retirement system, the possibility of double retirement credit for military academy time never arises.

constitutes military service for credit purposes." FPM 831–1 Supp. S3–5(b)(2) (September 21, 1981).[12] Whether the FPM provisions themselves are to be treated as rules and regulations binding on governmental agencies and the public has been considered open to much doubt and has never been authoritatively decided. *See Garbacz v. United States,* 228 Ct.Cl. 309, 656 F.2d 628, 634 & n. 3 (1981); *Jankowitz v. United States,* 209 Ct.Cl. 489, 533 F.2d 538, 542–43 & n. 3 (1976); *Piccone v. United States,* 186 Ct.Cl. 752, 407 F.2d 866, 871 n. 12 (1969); *Piccone,* 407 F.2d at 876–79 (Nichols, J., concurring).

At first glance, it would appear that an authoritative conclusion on that point should not be necessary to decide the present case since there should be little difficulty finding the FPM provision in question invalid as contrary to 10 U.S.C. § 971(b). Nevertheless, Jeffrey argues on the basis of the FPM Supplement provision that "OPM recognizes service as a midshipman at the U.S. Naval Academy constitutes military service for civil service retirement credit purpose." While the FPM Supplement provision being contrary to statute should be sufficient by itself to invalidate it whether it be a provision, rule or regulation, in case it is felt that the 40 years that the OPM has had the FPM provision on its books is entitled to some weight, the following observations should remove any remaining doubt.

In the instant case, as noted above, there is no reason to believe that Congress delegated authority to the OPM to alter the definition of "military service" provided in 5 U.S.C. § 8331(13) and 10 U.S.C. § 971(b). In *Horner v. Acosta,* 803 F.2d 687, 695 (Fed.Cir.1986), this court rejected the argument that FPM provisions should be accorded the status of regulations.[13] We reject such a position as well. *See also Johnson v. Merit Systems Protection Board,* 812 F.2d 705, 711 (Fed.Cir.1987); *Griessenauer v. Department of Energy,* 754 F.2d 361, 364 (Fed.Cir.1985); *Doe v. Hampton,* 566 F.2d 265, 281 (D.C.Cir.1977).

Even assuming the FPM Supplement provision could be considered the equivalent of a regulation, at a minimum, the provision would need to satisfy the two requirements set out in *Chrysler Corp. v. Brown,* 441 U.S. 281, 301–04, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979), to be given the "force and effect of law." Under the *Chrysler* test, for any agency regulation to have the force and effect of law, it must first prescribe "substantive" or "legislative" rules rather than merely "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* at 301, 99 S.Ct. at 1717. Second, its promulgation must be pursuant to a specific statutory grant of authority and "must conform with any procedural requirements imposed by Congress." *Id.* at 302–03, 99 S.Ct. at 1718.

The Federal Personnel Manual, by its own definition, is the "official medium of the Office of Personnel Management for issuing personnel instructions, operational guidance, policy statements, related material on governmentwide personnel programs, and advice on good practice in personnel management to other agencies." FPM, ch. 171, subch. 2–1 (June 10, 1986); *see National Treasury Employees Union v. Reagan,* 663 F.2d 239, 243 (D.C.Cir.1981). Since the FPM and its supplements are

---

**12.** Apparently similar provisions have existed in the FPM since at least 1946. *See, e.g.,* FPM–5–29 (1946); FPM R–5–19 (1959); and FPM 831–1 Supp. S3–5(b) (1964–74).

**13.** In *Acosta,* the issue was whether the respondent contract employees, who had not been appointed to federal positions, were entitled to service credit under the CSRA for the time periods in question. 5 U.S.C. § 8331(1) (1982) defined "employee" for CSRA purposes by reference to 5 U.S.C. § 2105(a) (1982). The OPM had found that the respondent contract employees had not been appointed in the civil service within the meaning of section 2105(a) as incorporated in section 8331(1). On appeal to the MSPB, the MSPB agreed that the respondents had not been appointed under section 2105(a), but nevertheless found them entitled to service credit for retirement purposes based on a provision of the FPM Supplement which allowed such contract service to be credited. This court reversed the MSPB, refusing to apply a longstanding FPM Supplement provision allowing credit for contract service which was contrary to and conflicted with section 2105(a).

designed to be the type of nonsubstantive rules implementing policy, procedure, and practice which are excluded under the first prong of the *Chrysler* test, it is extremely doubtful whether FPM provisions in general can achieve the status of law. *See Rank v. Nimmo*, 677 F.2d 692, 698–99 (9th Cir.), *cert. denied*, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982).

■ Taking the inquiry a step further to look at the specific FPM Supplement provision in question here, it is beyond doubt that the provision could be at most an interpretive regulation since the OPM was not instructed by statute to define further the term "military service" or how its length is to be calculated. "An interpretive regulation ... is one issued ... without delegated legislative power." *Fmali Herb, Inc. v. Heckler*, 715 F.2d 1385, 1387 (9th Cir.1983) (where court found that since FDA was not instructed by statute to define term, regulation defining the term was merely interpretive).

> [Interpretative] rules are essentially hortatory and instructional in that they go more "to what the administrative officer thinks the statute or regulation means" when applied in particular, narrowly defined, situations.... By merely clarifying the law's terms as applied situationally, interpretive or administrative-type rules are used more for discretionary fine-tuning than for general law making.

*Alcaraz v. Block*, 746 F.2d 593, 613 (9th Cir.1984) (citations omitted).

■ In the instant case, it is established that there is no reason to believe that Congress delegated authority to the OPM to alter the method provided in 10 U.S.C. § 971(b) to calculate length of "military service" as defined in 5 U.S.C. § 8331(13). Congress did not expressly ask the OPM to do so. The administrative officer who did so was mistaken as to what 5 U.S.C. § 8332(c) meant when applied in the narrowly defined situation of use of military academy attendance for civil service

retirement purposes. It is already established that an interpretive regulation which is contrary to the plain meaning of the statute that the regulation interprets, as well as to the statute's legislative history, cannot be sustained. *General Electric Co. v. Gilbert*, 429 U.S. 125, 145, 97 S.Ct. 401, 412–13, 50 L.Ed.2d 343 (1976); *Fmali Herb*, 715 F.2d at 1387. A regulation which is issued without any legislative delegation of authority, which interprets a statute that needs no interpretation, and which also conflicts with another statute cannot be sustained. Since FPM 831–1 Supplement provision S3–5(b)(2) does all three without even clearly being a regulation, it must be invalid.[14]

This court in *Acosta*, in addition to rejecting the argument that the FPM Supplement provision should be accorded the status of a regulation, rejected the argument that because the subject provision existed prior to the latest amendment of section 2105(a), the agency's longstanding administrative interpretation was entitled to great deference under an "informed inaction" standard. The court found that where Congress subsequently enacted legislation in the particular area which expressly covered the matter at issue, the statute controlled. *Acosta*, 803 F.2d at 695. The court also dismissed as incredible the argument that, because the FPM Supplement provision existed in substantially the same form prior to the first enactment of section 2105(a), Congress intended to incorporate that specific provision covering a minor portion of title 5 into the broad definition covering the entire chapter. *Id.* at 696.

The reasoning used in *Acosta* applies with equal or greater force to the present case. Congress amended 10 U.S.C. § 971(b) in 1984 in order to incorporate into the statute the holding in the *Jacobs* case which confirmed its intent to continue its method of calculating length of military service for any purpose for all branches of the armed forces. In keeping with the

---

**14.** Furthermore, it is of little import that the FPM provision may have existed in its present form for at least the last 40 years since this is apparently the first time that it has undergone judicial review. A regulation or manual provision contrary to statute is not cured by longevity.

holding in *Acosta,* the amendment of 10 U.S.C. § 971 in 1984 renders the FPM Supplement provision which was last issued in 1981 obsolete due to the subsequent reenactment of the conflicting statute.

■ The "informed inaction" standard rejected in *Acosta* also has no applicability to the present situation for two reasons. First, the subject FPM provision conflicts with a different statute than the one that it supposedly interprets. Congress cannot be held to have approved or even been aware of the contrary provisions in the FPM issued under title 5 when it reenacted the provisions contained in 10 U.S.C. § 971. In fact, it is just as likely but not as excusable that the OPM was unaware of the statutes in other titles which impact upon its duties arising under title 5 when it issued the FPM provision. It is incredible to assume that Congress would allow the contrary FPM provision in the present case to override its clear intent to define length of service for all branches of the armed forces for any purpose without expressly so providing. *See Lanehart v. Horner,* 818 F.2d 1574, 1579 (Fed.Cir.1987).

■ Second, since nothing in title 5 itself can properly be read to contradict or question the provisions of 10 U.S.C. § 971(b), there actually has been no intervening congressional action which has ratified the administrative construction illustrated by the FPM Supplement provision. It is clear that Congress did not intend to limit its unmistakable intent in 10 U.S.C. § 971(b). Thus, the FPM Supplement provision simply falls as contrary to statute.

As a final point, we note that the Director argues that since the OPM is the agency responsible for administering the Civil Service Retirement Act, OPM interpretations of that Act are entitled to deference and therefore the board should have deferred to the OPM's interpretation of 5 U.S.C. § 8332(c) in the present case. The court recently reiterated that view, stating:

> Congress authorized OPM to administer the CSRA and to promulgate implementing regulations. 5 U.S.C. § 8347(a). The long-standing interpretation placed on a statute by the agency charged with

its administration should be followed unless there are compelling indications that it is wrong. *E.g., Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); (other citations omitted).

*Money v. Office of Personnel Management,* 811 F.2d 1474, 1477 (Fed.Cir.1987); *see also Horner v. Andrzjewski,* 811 F.2d 571, 574 (Fed.Cir.1987) ("As a general rule, a long-standing interpretation of a statute by an agency charged with its administration must be upheld if reasonable."). On the other hand, the Supreme Court has observed that:

> courts are the final authorities on issues of statutory construction. They must reject administrative constructions of [a] statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.

*Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981) (citations omitted); *Lisiecki v. Merit Systems Protection Board,* 769 F.2d 1558, 1565 (Fed.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986); *see also Al Tech Specialty Steel Corp. v. United States,* 745 F.2d 632, 642 (Fed. Cir.1984) (" 'deference [to an agency interpretation] is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history' " (citations omitted)).

However, under the facts of the present case, the above general rules of statutory interpretation have limited applicability since it is not OPM's interpretation of 5 U.S.C. § 8332(c) that is determinative here. OPM is not charged with the administration of title 10 nor was the FPM Supplement provision promulgated to interpret 10 U.S.C. § 971(b). Furthermore, the FPM Supplement provision in question must be considered as unreasonable and untenable in the face of the contrary congressional

intent and purpose underlying section 971(b).[15]

## CONCLUSION

This court cannot ignore and thus give implicit judicial approval to a statutory interpretation that is contrary to the plain language of the statute. In *United States v. Missouri Pacific Railroad Co.,* 278 U.S. 269, 277–78, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929), the Supreme Court made the following observation when urged to construe a statute which, like the one in the present case, contained no ambiguity:

> The language of [the] provision is so clear and its meaning so plain that no difficulty attends its construction in this case. Adherence to its terms leads to nothing impossible or plainly unreasonable. We are therefore bound by the words employed and are not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. It is elementary that where no ambiguity exists there is no room for construction. Inconvenience or hardships, if any, that result from following the statute as written must be relieved by legislation.

Examination of the legislative history of 10 U.S.C. § 971(b) further confirms the plain and unequivocal meaning of the statutory language chosen by Congress. Making changes in existing statutory law is properly within the exclusive domain of Congress so that deliberate legislative policy choices made by Congress may not be altered by this court under the guise of interpreting and applying federal statutes. Where, as here, the intent of Congress is undeniable, it is therefore also not the province of this court to permit the OPM to change Congress's mind for it. That privilege is for Congress alone.

Accordingly, we reverse the decision of the Merit Systems Protection Board for the reasons outlined in this opinion. We express no opinion on the parties' analysis of the legislative history of 5 U.S.C. § 8332(c) as it relates to the crediting of excess military service for civil service retirement pay when military academy time is not involved, since that issue is not before us in this case.

REVERSED.

NIES, Circuit Judge, concurring.

Because the present appeal does not require us to address the larger issue of civilian retirement credit for academy time under past or present law and that issue was not addressed by the parties, I do not join either the majority or dissenting opinions on that issue. I do concur in result with the majority but would resolve this appeal in favor of the government on the narrower issue raised by the parties. That issue has nothing to do with whether academy time can or cannot be treated as "military service" for purposes of credit towards civilian retirement under prior or current statutes.

OPM denied Jeffrey credit towards civilian retirement for time spent at the Naval Academy, not because it was academy time, but because Jeffrey received a military pension. It is undisputed that CSC and its successor OPM consistently interpreted the 1956–1982 version of section 8332(c) to preclude credit for civilian retirement purposes of *any* military service time if the employee received military retirement pay. That interpretation closely tracks the statutory language during that time period which stated (with exceptions not pertinent here): "[A]n employee ... shall be allowed credit for periods of military service ... [unless] an employee ... is awarded retired pay on account of military

---

**15.** As for the suggestion that use of the word "officer" in section 971(b) would allow civil service retirement credit for the academy time of a civil service retiree who had attended the academy as a cadet or midshipman but failed ultimately to be commissioned as an officer, it is only necessary to point out that "it is a 'familiar rule that a thing may be within the letter of the statute, but not within its spirit nor within the intention of its makers.'" *Texas State Commission for the Blind v. United States,* 796 F.2d 400, 406 (Fed.Cir.1986) (in banc) (quoting *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892)).

service." OPM's interpretation cannot possibly be held to be unreasonable, as the MSPB held, on the basis of non-existent supportive legislative history for the agency's interpretation at the time of enactment in 1956 of the version of section 8332(c) under review.

In its attack on the majority's analysis, the dissent eloquently sets out the principles that require us to uphold an agency's long-standing interpretation. Application of those same principles requires us to uphold the twenty-five year *uniform* interpretation by CSC and OPM that receipt of a military pension under the 1956–1982 statute precludes credit towards civilian retirement of *any* military service.

The preclusive effect of a military pension in the 1956–1982 period, per OPM's interpretation, encompasses not only military service credited towards military retirement, but also *any uncredited* military service, not simply academy time, e.g., active duty service beyond thirty years. The dissent relies on OPM's interpretation of academy time as military service to overturn OPM's interpretation of the preclusive effect of a military pension. It simply sets up a strawman and knocks it down.

In any event, I would hold that the MSPB erred in substituting its interpretation of the 1956–1982 version of the statute for that of OPM.

PAULINE NEWMAN, Circuit Judge, with whom FRIEDMAN and DAVIS, Circuit Judges, join, dissenting.

This court has now decided to eliminate pension rights that have existed for some sixty years. The majority has determined that the civil service law must yield to the military law, and concluded that Congress never intended to grant civilian pension rights to service academy graduates, although they have been granted for decades. Thus, the majority has determined that the administrators of the civil service law have long been in conflict with the military law. In the course of this determination the majority has extended the military law beyond its reasonable context.

This court today finds a long-standing civil service practice, that of crediting time as a midshipman toward civil service retirement, to be in conflict with the laws governing the military service. The majority expresses no surprise that such a conflict has not been spotted until now, but is not daunted in taking corrective action.

The majority does not hold that the administrative agency's practices have conflicted with the civil service laws they have implemented over the decades. The law governing civil service retirement credits for military veterans who serve in the civil service is the civil service law, not the military law. Nevertheless, to remedy this newly-discovered conflict, the majority not only reinterprets the civil service law in effect between 1956 and October 1, 1982, but also the corresponding laws before 1956 and after October 1, 1982—although they have not been challenged. The majority thus concludes that time in the service academies shall not be counted toward civilian pensions, whether or not a military pension is paid. That is a much broader issue than the one on which this appeal arose.

OPM and the MSPB agree that the pre–1956 and post–1982 laws authorize the civil service pension credits here eliminated. The 1982 amendment, according to the OPM, changed the law that OPM relies on in the action at bar, which deals solely with the 1956–1982 period. The majority, in its ruling that the General Military Law always barred these civil service pension credits, has declared the entire operation illegal from the start.

### The Military Laws

The majority relies on the following provision in the General Military Law, 10 U.S.C. § 971(b):

In computing length of service for any purpose—

(1) no officer of the Navy or Marine Corps may be credited with service as a midshipman at the United States Naval Academy or as a cadet at the United States Military Academy, United States Air Force Academy, or United States

Coast Guard Academy, if he was appointed as a midshipman or cadet after March 4, 1913....

This text in various forms has coexisted in unchallenged harmony with the civil service statutes. The military law does not state that service as a midshipman may not be considered by any other law for the purpose of such other law, but refers solely to computations of length of service as an officer under the military law.

The context of this provision illustrates its scope and meaning. The preceding section, 10 U.S.C. § 971(a), states:

Service Credit: officers may not count enlisted service performed while serving as cadet or midshipman.

Section 971(a) prevents officers from counting as enlistment time their service at a military academy. Section 972(b) then provides that time in the academy is not to be counted in computing the officer's length of service for any purpose. The limitation of section 971 to "officers" illustrates Congress' intent to legislate only an officer's longevity credits, not a civilian's. Neither section (a) nor (b) discusses any impact on a civilian's future opportunities that may recognize and credit his or her military past.

Section 971(b) originated, and for most of its history appeared in, the military appropriations acts, dealing with military pay, military allotments and allowances, military retirement, etc. The provisions of a statute must be read in context. *See Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962) (" 'we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.' ") (brackets in original) (quoting *Mastro Plastics Corp. v. Labor Board*, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956)).

It is reasonable to read these provisions as intended to exclude military academy time from all calculations of service obligations and service pay based on length of service. Such reading is supported by the context in which these provisions arose, and is in complete harmony with the civil service procedures here struck down. For example, in the Act of June 7, 1924 the subject provision appeared in the following context:

TITLE I—MILITARY ACTIVITIES AND OTHER EXPENSES OF THE WAR DEPARTMENT INCIDENT THERETO

\*      \*      \*      \*      \*      \*

Finance Department Pay, and So Forth of the Army

\*      \*      \*      \*      \*      \*

For additional pay to officers for length of service, $5,374,830: *Provided*, that in computing for any purpose the length of service of any officer of the Army who was appointed to the United States Military Academy or the United States Naval Academy ... the time spent at either academy shall not be counted.

Ch. 291, 43 Stat. 892, 895–96. These provisions, of which the majority has provided a comprehensive list, were codified in 1934 as part of Title 10, as follows:

Chapter 25—PAY AND ALLOWANCES

\*      \*      \*      \*      \*      \*

Longevity Pay

\*      \*      \*      \*      \*      \*

§ 684. Time served as cadet at Military or Naval Academy. The service of a cadet who has been appointed to the United States Military Academy or to the United States Naval Academy, since August 24, 1912, or who shall hereafter be appointed to either of those academies, shall not be counted in computing for any purpose the length of service of an officer of the Army.

\*      \*      \*      \*      \*      \*

Chapter 26—RETIREMENT

\*      \*      \*      \*      \*      \*

SERVICE COUNTED IN DETERMINING RIGHT TO RETIREMENT

§ 952. Period of cadetship at Military or Naval Academy. In computing for any purpose the length of service of any officer of the Army appointed after Au-

gust 24, 1912, the time spent at either academy shall not be counted.

The corresponding sections that were eventually transferred to 10 U.S.C. § 971 were 10 U.S.C. §§ 3682; 6116; 8682 (1958). The accompanying "Historical and Revision Notes" state that Congress did not intend to make substantive changes. It is a fair and consistent reading of these statutes to limit their scope to the military purposes which they serve.

Nothing in these sections of the military law bars any other law from counting military academy time for the purpose of such other law. It is reasonable, and it avoids the conflict here created, to view these statutes as they have always been viewed, as pertaining to their own area of authority.

The civil service laws have contained many and varied provisions relating to veterans' rights as civilian employees in the civil service. Included have been duplicate pension credits for disabled veterans and credits for military service that is not counted in computing military retirement pay. Even during the period here disputed by OPM, the civil service retirement acts have consistently been administered to include in civilian pension calculations certain military service credits that the military laws expressly exclude. This administration of the civil service law has not been deemed inimical to the military law. To the contrary, these statutes have, until today, coexisted.

Title 10 and Title 5 are readily construed in harmony, merely by recognizing that the words "for any purpose" in 10 U.S.C. § 971 can reasonably be construed to mean for any purpose governed by Title 10.[1] The bar in Title 10 against the inclusion of military academy time arose before the general civil service retirement laws came into existence. *See* 41 Stat. 614, Act of May 22, 1920 ("An Act for the retirement of employees in the classified civil service, and for other purposes"). The 1912 military law can not have been aimed at nonexistent civil service retirement practices.[2] Then and now, it applies to those matters controlled by the military.

### The Civil Service Retirement Laws

The 1920 Civil Service Retirement Act, as the present Act, contemplated the inclusion of military service in civil service retirement calculations, excluding only "the period of his or her military or naval service upon which such [military] pension or compensation is based". 41 Stat. at 615.

This text was continued in the 1930 Civil Service Retirement Act, which was administered, according to the Federal Personnel Manual ("FPM"), as follows:

Credit is allowed for all honorable military or naval service . . . with the following exceptions:

(1) If an employee receives retired pay on account of military or naval service, the period of service upon which retired pay is based shall be excluded.

Tables I and III . . . may be used for determinations as to whether service was active military service [for civil service retirement credit]. Table I, [beginning on] page V1–12, lists the parts of the armed forces of the United States.

FPM R5–29.02 (July 11, 1946). Table I lists the following "components" of the Regular Navy:

Commissioned and enlisted personnel

Navy Nurse Corps

---

**1.** The use of *"any* purpose" in the military law (emphasis added) is by no means conclusive of the current problem of civilian retirement pay. In *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), the Supreme Court had no trouble reading the all-inclusive term *"any* court of the United States" (emphasis added) in the Declaratory Judgment Act as not including the Court of Claims because the history and ordinary jurisdiction of that court did not chime with the purposes and coverage of the Declaratory Judgment Act.

**2.** Section 971(b) only excludes time at the academy from computations of "the length of service of any *officer".* According to the majority, those who do not complete their officer obligations but who serve in an enlisted grade, 10 U.S.C. § 6959(b)(1), are not barred from civil service credits. It is curious that, if Congress did not intend academy time to count for any non-military purpose, it would have limited section 971(b) to officers.

Midshipmen of the United States Naval Academy

FPM V1–13 (July 19, 1945).

The OPM and the Board agree: "There is no question that this language [referring to 5 U.S.C. § 707 of the 1930 Act] permitted credit for periods of military service that were *not* considered in calculating an employee's military retired pay." (OPM Brief at 8) (emphasis in original). It was uncontested in the case at bar that civil service retirement credit under the 1930 Act included time in the military academies. Indeed, OPM relies on this position in support of its theory that the 1956 Act made a change in the governing law.

In 1956 the Civil Service Retirement Act was amended in major ways not here pertinent. 5 U.S.C. § 707 became 5 U.S.C. § 8332(c), as follows:

(c) Except as provided by subsection (d) of this section, an employee or Member shall be allowed credit for periods of military service before the date of the separation on which title to annuity is based. However, if an employee or Member is awarded retired pay on account of military service, his military service may not be credited unless the retired pay is awarded

(1) on account of a service-connected disability—

(A) incurred in combat with an enemy of the United States; or

(B) caused by an instrumentality of war and incurred in line of duty during a period of war as defined by section 301 of title 38; or

(2) under chapter 67 of title 10.

According to OPM's argument, this enactment changed the calculation of civil service retirement to eliminate military academy time, because it replaced the pre–1956 words:

the period of military or naval service upon which such retired pay is based shall not be included ...

with the words:

his military service may not be credited.... OPM states that this change

meant that if an employee received any military retired pay whatsoever, the employee would no longer receive civil service retirement credit for any uncredited military service. Under this interpretation, the retiree would receive neither civil nor military service retirement credit for those periods of military service not included in the calculation of military retired pay.

The MSPB, disagreeing with the OPM, interpreted this word change as merely continuing the exclusion of dual retirement credit except for disabled veterans. The Board stated: "OPM's interpretation of the law would have the effect of denying *any* credit under *any* system for the 3½ years of [Jeffrey's] Academy service. This was not the intent of Congress prior to 1956 nor after 1982. As to the exact intent of Congress in passing the 1956 legislation, the agency has offered no evidence to support its contention that the law was being deliberately changed." *Jeffrey v. Office of Personnel Management*, No. DC08318410693, slip. op. at 4 (MSPB Jan. 8, 1985) (emphasis in original).

The legislative history accompanying the 1956 enactment supports the MSPB's view that no substantive change was intended. The House Report identified those employees who would be affected by the Act. H.R.Rep. No. 2854, 84th Cong., 2d Sess. 1, 7–8, 24–25 (1956). There was no reference to persons with military service or military academy time who would lose existing retirement credits toward civil service retired pay; nor was there a calculation of savings to the government if civil service pensions were so reduced.[3]

Equally absent over all these years was any suggestion of conflict with the General Military Law 10 U.S.C. § 971, the core of the majority decision. Even the OPM did not raise this argument in support of its position.

The Federal Personnel Manual after the 1956 Act continued to provide, without qualification:

---

3. OPM estimated over 16,000 such persons, at a cost of some $60 million; such a saving would reasonably have been mentioned if it were contemplated. (The OPM calculation refers to all military veterans. No calculation limited to service academy graduates has been provided.)

Service as Midshipman ... constitutes military service for credit purposes.

FPM R–5–19 (March 20, 1959).

Although Mr. Jeffrey retired before the effective date of the October 1, 1982 Act, OPM relies heavily on the 1982 amendment of 5 U.S.C. § 8332(c) that reinstated the pre–1956 text, as evidence of congressional intent to restore the pre–1956 entitlement to civil service credit for service academy time, and thus as evidence that a contrary intent prevailed in 1956–1982. The Board disagreed with this theory, and indeed this theory finds no support in the words of the statute, the legislative history, or the long-standing administration of these statutes.

The pertinent regulation continued to prohibit dual payment except for disabled veterans, and the Federal Personnel Manual was not substantively changed in 1982 or later from the prior version, and continues to state that:

[S]ervice as a midshipman ... constitutes military service for credit purposes.

FPM 831–1 Supp. S3–5(b) (September 21, 1981). This practice was constant, before, during, and after the period now challenged by OPM.

The court can not ignore this long-standing interpretation by the agency charged with administering its own law:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, *as would be necessary in the absence of an administrative interpretation.* Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. ... [A] court may not substitute its own contruction of a statutory provision for *a reasonable interpretation* made by the administrator of an agency.

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (emphasis added).

Despite the agency's consistent and reasonable interpretation and the lack of Congressional address to this asserted longstanding conflict, the majority holds that OPM and its predecessors have always incorrectly construed the law. We have repeatedly held that deference is due to an agency's interpretation of its own statute. *E.g., Minnesota Power & Light Co. v. United States,* 782 F.2d 167, 170 (Fed.Cir. 1986); *Burlington Northern R.R. Co. v. United States,* 752 F.2d 627, 629 (Fed.Cir. 1985); *Al Tech Specialty Steel Corp. v. United States,* 745 F.2d 632, 642 (Fed.Cir. 1984); *Melamine Chemicals Inc. v. United States,* 732 F.2d 924, 928 (Fed.Cir.1984); *Nabisco, Inc. v. United States,* 220 Ct.Cl. 332, 599 F.2d 415, 422 (1979). If Congress intended to forbid that which has been done for decades, its silence is not evidence of that intent.

This longstanding administrative construction is entitled to great weight, particularly when, as here, Congress has revisited the Act and left the practice untouched.

*Saxbe v. Bustos,* 419 U.S. 65, 74, 95 S.Ct. 272, 279, 42 L.Ed.2d 231 (1974). *Accord Zenith Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978). *See also Consumer Products Division, SCM Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033, 1039, 3 Fed.Cir.(T) 83, 90 (Fed.Cir.1985) (agency's "interpretation of the statute need not be the *only* reasonable interpretation or the one which the court views as the most reasonable").

The question is not whether the Federal Personnel Manual has the status of law. The Manual shows the agency practice, and as such is of compelling weight as to agency interpretation of, and the open and notorious coexistence of, these civil and military service laws. It is impertinent to attribute decades of acquiescence of Congress as due to ignorance.

Although agency discretionary authority does not encompass statutory interpreta-

tions that are contrary to law, until now these military and civil service provisions relating to service academy time have been interpreted in complete harmony. Neither military nor civil agencies have complained of the conflict now found by this court.

The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.

*Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).

There is a judicial obligation to preserve, if possible, rather than to invalidate. Practices that have coexisted for decades should not easily be declared in fatal opposition. The majority has reached a policy decision, not a legal one. The majority believes, for it so states, that it is unfair for service academy graduates, educated at taxpayer expense, to receive civilian pension credits as compared with other veterans. To remedy this perceived inequity the court has created conflict where the legislators and the executive and the administrators have seen none, and has resolved the conflict in accordance with its preference. This is not the role of the judiciary.